## Ex parte DOVE.

District Court, D. Minnesota, Fifth Division.
Aug. 14, 1925.

Washburn, Bailey & Mitchell, of Duluth, Minn., for petitioner.

Clifford L. Hilton, Atty. Gen., and Rollin L. Smith, Asst. Atty. Gen., for respondent.

CANT, District Judge.

The petitioner has been arrested for fishing within that part of Rainy Lake which lies within the state of Minnesota, contrary to the law of that state, and, at the time of the hearing herein, he was in the custody of one of the game wardens of said state. He claims that, by reason of treaty relations between the United States and Great Britain, such law is invalid and that he is wrongfully deprived of his liberty.

The Treaty of July 1, 1908, between the United States of America and Great Britain, relating to fisheries in the waters contiguous to the United States and the Dominion of Canada, provided for the appointment of an International Fisheries Commission. Under such treaty it was provided further that such commission should prepare a system of uniform and common international regulations and restrictions for the preservation and protection of the food fishes in the waters referred to. It was provided that such regulations and restrictions should cover a wide field, including provision for closed seasons, limitations as to the character, size, and manner of use of nets, engines, gear, apparatus, and other appliances used in catching fish in said waters. Further provisions were to the effect that the two governments should put in operation and enforce by legislative and executive action the regulations, restrictions, and provisions which should be agreed upon by the said International Fisheries Commission, and that the date when such regulations, restrictions, and provisions should go into effect should be fixed by concurrent proclamation made by the proper executive officers of the respective governments.

The International Fisheries Commission was duly appointed pursuant to the provisions of said treaty, but no regulations, restrictions, or provisions of any kind have ever been finally agreed upon by said commission or proclaimed by the respective governments involved.

It cannot be doubted that this is a matter concerning which the state may enact and enforce legislation until such time as the federal authorities shall act in reference thereto by legislation or treaty. Until the regulations and restrictions contemplated by the treaty shall be agreed upon and until the date of their being put into operation shall be proclaimed, the treaty is of no effect in displacing or superseding the authority of the State laws. Until that time the treaty is a dead letter, except that it gives authority for the appointment of the commission, and for such attempts at framing and agreeing upon regulations and restrictions as the commission may make. The true meaning and effect of the treaty is that, when its terms are complied with, and not until then, the laws of the state relating to the same subject-matter shall be abrogated. In such matters it is important that there be legislative supervision and control, and that there be regulations and restrictions looking to the propagation and preservation of the food fishes. Otherwise the fish might soon be destroyed. If the subject-matter is covered by state regulation, that regulation should not be stricken down or interfered with until a real conflict between state and federal authority, or between state laws and the treaty, shall arise. No such situation has developed here.

The petitioner therefore should be held subject to the provisions of the state laws, and the writ should be discharged.