131 So.2d 889 (1961)
Alton MILLIKEN, Appellant,
v.
STATE of Florida, Appellee.
O'Neil CAISON, Appellant,
v.
STATE of Florida, Appellee.
Nos. 40002, 40003.
Supreme Court of Florida.
June 30, 1961.
Ehrich & Zuckerman, Miami, for appellants.
Richard W. Ervin, Atty. Gen., and Joe L. McClung, Asst. Atty. Gen., for appellee.
*890 HOBSON, Justice.
These cases are before us on direct appeals from the criminal court of record of Monroe County. They were tried separately but have been consolidated on appeal because the same basic issue is common to both cases. Our jurisdiction is based on direct rulings of the court below on the validity of a state statute.
At the time of the alleged offenses the appellant Milliken was the master of a shrimping vessel named "The Captain Don", and appellant Caison was the master of another shrimper named "The Rock and Roll". These vessels were seen on several separate occasions dragging shrimp nets in an area known and designated by statute as the Tortugas Shrimp Beds. Thereafter appellants were arrested and charged by informations with "dragging shrimp nets in a prohibited area" on the several occasions in violation of Section 370.151(5), F.S.A.
Milliken's case was tried by a jury but Caison waived jury trial. Both appellants were adjudged guilty and sentenced to pay fines. Prior to trial in each case the appellants filed motions to quash the informations. The motions were identical as to the grounds raised in support thereof.
It was alleged that subsequent to the enactment of Section 370.151, F.S.A. in 1957, the United States and Cuba entered into a treaty designed to set up a commission composed of members from the two countries to promulgate regulations for the conservation of shrimp in the Tortugas area. It was urged that as a result of the entry of the United States into this treaty the control and enforcement of shrimp conservation measures in the Tortugas area became a matter exclusively and solely within the jurisdiction of the federal government and that the Florida statute which covers the same subject matter is no longer operative.
Inasmuch as the motions to quash set up but one ground in their attack on the informations, that ground being the validity of a state statute, and since the trial court denied the motions, it follows as a matter of course that there was inherent in the trial court's denial of the motions a direct ruling on the validity of the state statute in question. Accordingly we hold that we have jurisdiction of this case on direct appeal. Article V, Section 4(2). Harrell's Candy Kitchen, Inc. v. Sarasota-Manatee Airport Authority, Fla., 111 So.2d 439; Evans v. Carroll, Fla., 104 So.2d 375.
It is true that it has been held that a state law in conflict with or purporting to regulate the same matter as a federal treaty has been said to be merely unenforceable, suspended or superseded, rather than invalid. See Blythe v. Hinckley, 127 Cal. 431, 59 P. 787. This, however, seems to be placing a hypertechnical meaning on the word validity, and we are of the opinion that under Article V our jurisdiction does not depend on such niceties of construction. If there were merit in the points raised in the motions to quash, then our statute would be, for all practical purposes, "invalid" in that it would be unenforceable.
In addition to being the basis for our jurisdiction, the ruling of the trial court on the motions to quash presents us with the basic issue on the merits common to both cases. In order to resolve this issue it is necessary to consider the terms of both the state statute and the treaty.
The purpose of Section 370.151 as stated in subparagraph (1) is the conservation of the supply of shrimp in the Tortugas Shrimp Bed. The statute endows the director of the department of conservation with the power to declare the Tortugas Shrimp Beds or portions thereof closed for the purpose of taking shrimp. Upon such closing it is provided that notice shall be given by appropriate buoys or other markings, in newspapers and by radio. Subparagraph (5) of the statute provides that the master or owner of any shrimp vessel dragging its nets in a closed area shall be deemed guilty of a misdemeanor.
*891 The subject treaty, which was signed at Havana, Cuba, August 15, 1958, and which became effective September 4, 1959, applies to "the waters of the Gulf of Mexico off the coast of Cuba and the Florida coast of the United States, including territorial waters, in which are found stocks of shrimp of common concern", Article I. Article II, paragraph 1 of the treaty provides in part:
"The Contracting Parties agree to establish and operate a commission * * * which shall carry out the objectives of this convention". (Italics supplied.)
This article goes on to provide for the membership and administration of the commission. Article III gives the commission responsibility for obtaining scientific information concerning shrimp in the convention area, publishing its findings and adopting such regulations as are necessary to effectuate the purposes of the convention.
Article V of the treaty makes provisions for enforcement by the Contracting Parties of "any regulations which enter into force pursuant to Article III of this Convention."
Article VII provides:
"Nothing in this Convention shall be construed as preventing either of the Contracting Parties or in the case of the United States, any of the States, from making or enforcing laws or regulations which in the absence of this Convention would be valid relative to any fisheries of the Convention area so far as such laws or regulations do not preclude the discharge of the Commission's responsibilities."
The appellants contend that the entry into this treaty by the United States serves to preempt the field of shrimp conservation in the subject area and that therefore any Florida statute purporting to regulate the taking of shrimp in the Tortugas Shrimp Beds is inoperative and unenforceable.
We are unable to agree with this contention. In the first place it is noted that the Contracting Parties agreed "to establish and operate a commission". The record is completely devoid of any evidence tending to show that such a commission was ever established either by implementing federal legislation or by executive proclamation. Moreover, our research has failed to reveal the establishment or operation of such a commission. It is well settled that a treaty provision will not operate to supersede or suspend a state statute if the treaty is not self-executing and if no implementing legislation has been enacted. Cameron Septic Tank Company v. City of Knoxville, 227 U.S. 39, 33 S.Ct. 209, 57 L.Ed. 407; Fujii v. State, 38 Cal.2d 718, 242 P.2d 617. See also cases cited in Sections II a. of the annotations contained in 4 A.L.R. 1377 and 134 A.L.R. 882.
The case of Ex parte Dove, D.C. 1925, 49 F.2d 816 involved a treaty with provisions quite similar to those of the instant treaty, including the appointment of an International Fisheries Commission to prepare a system of regulations for the preservation of food fish in the affected area. It was held that the treaty did not supersede state laws until the provisions thereof were made effective by legislative or executive action. The following language in that case is particularly pertinent here:
"It cannot be doubted that this is a matter concerning which the state may enact and enforce legislation until such time as the federal authorities shall act in reference thereto by legislation or treaty. Until the regulations and restrictions contemplated by the treaty shall be agreed upon and until the date of their being put into operation shall be proclaimed, the treaty is of no effect in displacing or superseding the authority of the State laws. Until that time the treaty is a dead letter, except that it gives authority for the appointment of the commission, and for such attempts at framing and agreeing upon regulations and restrictions as the commission *892 may make. The true meaning and effect of the treaty is that, when its terms are complied with, and not until then, the laws of the state relating to the same subject-matter shall be abrogated. In such matters it is important that there be legislative supervision and control, and that there be regulations and restrictions looking to the propagation and preservation of the food fishes. Otherwise the fish might soon be destroyed. If the subject-matter is covered by state regulation, that regulation should not be stricken down or interfered with until a real conflict between state and federal authority, or between state laws and the treaty, shall arise. No such situation has developed here."
Moreover, even if it could be assumed that the commission were formed and functioning there is no evidence that it has adopted any regulations in accordance with Article III, paragraph 1(c) of the treaty. If these matters alone were not sufficient to uphold the validity of the Florida statute, Article VII of the treaty makes it abundantly clear that there was no intention to prevent any of the states of the United States from making or enforcing its own laws and regulations insofar as such do not preclude the discharge of the commission's responsibilities. The appellants herein have completely failed to make any showing that the Florida statute in any way precludes the discharge of the commission's responsibilities, if indeed such a commission exists. Counsel for appellant contends that since there is no evidence of any action by the commission in limiting the taking of shrimp in the convention area it must be assumed that it was the intention of the parties to the treaty that the area be left unregulated by any state law. This interpretation we believe to be directly contrary to the letter and spirit of Article VII of the treaty.
It is a fundamental principle that a party asserting the nullity of a statute is charged with the burden of proving that it is invalid. This the appellants have failed to do. Accordingly we hold that the court below was correct in denying the motion to quash in both cases.
There remains one other issue to dispose of in the case of the appellant Milliken. It is contended that the state failed to prove that Milliken had actual knowledge of the closing of the area and that this failure is fatal to the case of the prosecution. This case is before us on a stipulated record, and it appears from the stipulation of testimony that no evidence was introduced to prove that appellant Milliken knew the area in question was closed on the dates and at the times set forth in the informations. It is also stipulated, however, that the state had complied with the notice and publication provisions of the statute. Subparagraph (5) of Section 370.151 provides:
"Whenever, under the provisions of this section, an area of the Tortugas bed as herein described has been closed and notice has been published, and any shrimp fishing vessel shall be found with its nets dragging in such closed area, the master of the vessel and the owner of the vessel shall be deemed guilty of a misdemeanor, and shall upon conviction be assessed such penalties as provided hereinafter. Due regard shall be given by the arresting officer to the receipt of notice of such closing by the offending masters, and, if it should appear to the arresting officer that the offending master did not have actual notice of the closed area, whether by buoys, lights, newspaper notices or radio, the master shall be issued a warning, * * *."
Appellant Milliken contends that the effect of this provision is to place upon the prosecution the burden of proving that the offending master had actual notice of the closed area. We believe, however, that a careful reading of the quoted section of the statute indicates that no such meaning was intended to be implied. The first sentence of subparagraph (5) creates a substantive *893 offense. That sentence makes no reference to actual notice, but provides merely that the area must have been closed and notice published. The "notice published" provision obviously refers back to subparagraph (3) (a) discussed previously. It is stipulated that these notice and publication provisions were complied with.
The second sentence of subparagraph (5) places an obligation on the arresting officer to give due regard to the question of whether or not actual notice was received and provides for the issuance of a warning. This is a somewhat unusual provision in a statute relating to a criminal offense, but in our opinion it does not change the nature of the substantive offense defined in the first sentence of subparagraph (5). At most the proviso contained in this second sentence of this subparagraph would create an affirmative defense of lack of actual knowledge. We do not feel, however, that the mere failure of the state to introduce evidence of such actual knowledge is fatal to the conviction where the state did affirmatively prove compliance with the notice provisions of the statute. The second sentence of subparagraph (5) is a provision relating only to the enforcement of the act and it does not affect the elements of the substantive offense as set out in the statute.
For the reasons stated the judgments of the lower court as to both of the appellants should be and they are hereby affirmed.
It is so ordered.
TERRELL, ROBERTS and DREW, JJ., concur.
THOMAS, C.J., and THORNAL and O'CONNELL, JJ., agree to conclusion.