HIDALGO COUNTY APPRAISAL DISTRICT and Hidalgo County Appraisal Review Board, Appellants,

v.

ENGFAR N.V. and Manfar N.V., Appellees.

No. 13–87–241–CV.

Court of Appeals of Texas, Corpus Christi.

June 23, 1988.

Rehearing Denied Aug. 31, 1988.

Richard S. Talbert, Weslaco, for appellants.

William F. Ikard, James Popp, Powell, Popp & Ikard, Austin, for appellees.

Before UTTER, KENNEDY and BENAVIDES, JJ.

## OPINION

UTTER, Justice.

Engfar N.V. and Manfar N.V., Engfar–Manfar, brought suit against the Hidalgo County Appraisal District and the Hidalgo County Appraisal Review Board, HCAD, to appeal HCAD's denial of their applications for open-space agricultural land appraisals as provided by Tex.Tax Code Ann. ch. 23, subch. D (Vernon 1982). The trial court held that the application of Tex.Tax Code Ann. § 23.56(3) (Vernon 1982),[1] Land Ineligible for Appraisal as Open–Space Agriculture Land, to Engfar–Manfars' property was violative of U.S. Const. art. VI, cl. 2 (supremacy clause) because it violated the Treaty of Friendship, Commerce and Navigation, March 27, 1956, United States–Netherlands, 8 U.S.T. 2043, T.I.A.S. No. 3942; and that Engfar–Manfars' property should be appraised for ad valorem taxation as open-space agricultural land.[2] We

**1.** § 23.56. Land Ineligible for Appraisal as Open–Space Land

Land is not eligible for appraisal as provided by this subchapter if:
\* \* \* \* \* \*
(3) the land is owned by a corporation, partnership, trust, or other legal entity if the entity is required by federal law or by rule adopted pursuant to federal law to register its ownership or acquisition of that land and a nonresident alien or a foreign government or any combination of nonresident aliens and

foreign governments own a majority interest in the entity.

**2.** Engfar–Manfar took a non-suit with prejudice to refile their causes of action alleging HCAD violated the Equal Protection clauses of Tex. Const. art. VIII, § 1 and U.S. Const. amend XIV. It is interesting to note, however, that Tex.Tax Code Ann. § 23.56(3) (Vernon 1982) has recently been upheld as non-violative of either the Texas or United States Equal Protection clauses. *See Alexander Ranch, Inc. v. Central Appraisal*

reverse and render the judgment of the trial court.

HCAD contends that the trial court erred in ordering the appraisal of Engfar–Manfar's property as open-space agricultural land because the property was not eligible for such classification under Section 23.-56(3) and because Section 23.56(3) does not violate the terms of the Treaty and therefore is not subject to the supremacy clause of the United States Constitution.

The facts were stipulated. Engfar–Manfar are corporations organized under the laws of the Netherlands Antilles and are authorized to do business in Texas. Both corporations are required to register and have registered the ownership of the land in accordance with the Federal Agricultural Foreign Investment Ownership Act. A majority interest of both corporations is owned by Uruguaian citizens. Engfar–Manfars' applications for open-space agricultural appraisals were denied solely because of the non-resident alien stockholder limitation of Tex.Tax Code Ann. § 23.56(3) (Vernon 1982).

The United States Constitution provides that "all Treaties made ... under the Authority of the United States, shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. Any state law in conflict with a treaty is invalid. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 157–58, 98 S.Ct. 988, 994–95, 55 L.Ed.2d 179 (1978); *Boehringer–Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.*, 737 F.2d 456, 459 (5th Cir.1984), *cert. denied, appeal dismissed for want of jurisdiction*, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985).

In addition, even when a state law does not expressly conflict with a treaty, it must yield if Congress has preempted the area the state seeks to regulate by either showing its intent to supplant state law or by regulating the subject matter so pervasively that it completely occupies the field. *Louisiana Public Service Commission v. Federal Communication Commission*, 476 U.S. 355, 106 S.Ct. 1890, 1898, 90 L.Ed. 2d 369 (1986); *In re Gary Aircraft Corp.*,

*District,* 733 S.W.2d 303 (Tex.App.—Eastland

681 F.2d 365, 369–70 (5th Cir.1982), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366 (1983). If preempted, a complementary or supplementary state regulation is as invalid as one directly conflicting with the federal scheme because preemption forbids state regulation to advance or retard the federal purpose. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 229–30, 67 S.Ct. 1146, 1151–52, 91 L.Ed. 1447 (1947); *KVUE, Inc. v. Austin Broadcasting Corp.*, 709 F.2d 922, 931 (5th Cir.1983), *aff'd*, 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984). Unless preemption is express, the test of preemption is whether (1) the area requires national uniformity; (2) there is evidence of congressional design to preempt the field; or (3) the state law actually and directly conflicts with the treaty. *See KVUE*, 709 F.2d at 931–32.

It has been held that "under the Federal system, state governments no less than the federal government possess certain inalienable powers that the other may not encroach upon, [and] of all such areas, the field of state taxation is perhaps the most important." *See Dawson v. Childs*, 665 F.2d 705, 709 (5th Cir.1982); *see also Container Corp. v. Franchise Tax Board*, 463 U.S. 159, 193–97, 103 S.Ct. 2933, 2954–57, 77 L.Ed.2d 545 (1983); *Weissinger v. White*, 733 F.2d 802, 805–806 (11th Cir. 1984); *McCann v. Silva*, 455 F.Supp. 540, 542 (D.C.N.H.1978).

 Therefore, we begin with the presumption that the Federal Government did not intend to invade by treaty the province of state law in matters inherently local, or to deprive any state of the right to exercise any of its sovereign powers. There is no question that ad valorem taxation of local real property is both inherently local and one of the State's sovereign powers. We will construe the Treaty so as not to derogate from the authority and jurisdiction of the State unless absolutely necessary to effectuate national policy. *United States v. Pink*, 315 U.S. 203, 230, 62 S.Ct. 552, 565–66, 86 L.Ed. 796 (1942); *Guaranty Trust Co. v. United States*, 304 U.S. 126,

1987, writ ref'd. n.r.e.) (U.S. appeal filed).

143, 58 S.Ct. 785, 793–94, 82 L.Ed. 1224 (1938); *Mayon v. Southern Pacific Transportation Co.*, 805 F.2d 1250, 1252 (5th Cir.1986).

■ Engfar–Manfar contend that Article XI of the Treaty controls the disposition of this case because it is the only provision in the Treaty which expressly relates to or mentions the subject of taxation.[3] Under this provision, the "companies of either Party ... shall not be subject to the payment of taxes ... within the territories of such other Party, more burdensome than those borne by Nationals and companies of such other Party." *Id.* Were Engfar–Manfar owned in majority part by nationals of either the Netherlands or the United States, we would agree. However, Engfar–Manfar is owned in majority part by *Uruguaian* nationals.

Article XXII permits the parties to exclude the Treaty's benefits from any Netherlands or United States' corporation in which the controlling interest is held by nationals of any third country who was not a party to the treaty.[4] Tex.Tax Code Ann. § 23.56(3) (Vernon 1982) merely states that

land owned by a corporation is ineligible for appraisal as open-space land if it is required by federal law to register its ownership and a nonresident alien owns a majority interest in the entity. Therefore, there is no apparent conflict on the face of the treaty because the benefits Engfar–Manfar seek in regard to ad valorem taxation were excludable because of the Uruguaian majority ownership in the corporations.

Engfar–Manfar first argues that Article XXII is inapplicable to the case at bar because the enabling language of the provision grants no authority or right to do anything. We do not agree. The express import of this provision grants the parties the power to limit the benefits of the Treaty to the parties of the Treaty. In fact, "the primary purpose of the corporation provisions of the [Friendship, Commerce and Navigation] Treaties was to give corporations of each *signatory* legal status in the territory of the other party, and ... to assure them the right to conduct business on an equal basis without suffering dis-

---

**3.** Art. XI of the Treaty states in relevant part:

1. Nationals of either Party residing within the territories of the other Party, *and nationals and companies of either party engaged in trade or other gainful pursuit* or in scientific educational, religious or philanthropic activities within the territories of the other Party, *shall not be subject to the payment of taxes, fees, or charges imposed upon or applied to income, capital, transactions, activities or any other object* or to requirements with respect to the levy and collection thereof, within the territories of such other Party, *more burdensome than those borne by nationals and companies of such other Party.*

 \* \* \* \* \* \*

3. Nationals and companies of either Party *shall in no case be subject within the territories of the other Party, to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities or any other object or to requirements with respect to the levy and collection thereof, more burdensome than those borne by nationals, residents and companies of any third country.*
4. In the case of companies and of non-resident nationals of either Party *engaged in trade or other gainful pursuit within the territories of the other Party, such other Party shall not impose* or apply any tax, fee or charge upon any income, capital or other basis in excess of

that reasonably allocable or apportionable to its territories nor grant deductions and exemptions less than those reasonably allocable or apportionable to its territories. A comparable rule shall apply also in the case of companies organized and operated exclusively for scientific, educational, religious or philanthropic purposes. (emphasis added)

**4.** *The present Treaty shall not preclude the application of measures by either Party:* (a) regulating the importation or exportation of gold or silver; (b) relating to fissionable materials, to radioactive by-products of the utilization or processing thereof, or to materials that are the source of fissionable materials; (c) regulating the production of or traffic in arms, ammunition and implements of war, or traffic in other materials carried on directly or indirectly for the purpose of supplying a military establishment; (d) necessary to fulfill its obligations for the maintenance or restoration of international peace and security, or necessary to protect its essential security interest; (e) *denying to any company in which nationals of any third country or countries enjoy directly or indirectly the controlling interest, the advantages of the present Treaty,* except with respect to recognition of juridical status and with respect to access to courts; and (f) regarding its national fisheries and the landing of the products thereof. (emphasis added)

crimination based on their alienage" (emphasis added). *See Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 596 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983) (citing *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 185–88, 102 S.Ct. 2374, 2371–81, 72 L.Ed.2d 765 (1982)).

■ As a general principal of international and United States law, a treaty creates neither rights nor obligations for a country which is not a party to that treaty. *See Jet Traders Investment Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 567 (D.Del.1981); *see also* Vienna Convention on the Law of Treaties, Art. 34, May 23, 1969, U.N.Conf. Doc. A/Conf. 39/27, 8 Int'l.L.Mat. 679 (1969); Restatement (Second) of Foreign Relations Law of the United States, § 139 (1965). Uruguay is not a signatory country to this Treaty. Moreover, the history of Article XXII suggests that the possibility of a "free ride" by third-country interest is one to be guarded against and was the basis for the insertion of such provisions.[5] The fact that it is a latent protective clause which becomes operational only upon the affirmative action of one or both of the parties is irrelevant. Once a party acts, Article XXII becomes functional and stands in the same position as any other provision in the Treaty.

■ Engfar–Manfar next argues that the terms "by either party" should be literally translated to mean by either the United States or the Netherlands to the exclusion of Texas and other states desiring to activate this provision. We do not believe that this provision should be given such a narrow construction under the facts of this case. Congress has not enacted any specific legislation in this regard, and the Federal government's silence has historically been taken as being permissive of continuing State regulation. U.S. Const. amend. X; *see also Milliken v. State*, 131 So.2d 889,

891–92 (Fla.1961); *see generally Interim Report to Congress, Foreign Direct Investment in the United States*, U.S. Dept. of Commerce, Vol. 2, appendix XI–35 (Oct. 1975). Moreover, there is no indication that Congress intends to occupy the entire field of ad valorem taxation or that it warrants national uniformity. *See Container Corp.*, 463 U.S. at 196–97, 103 S.Ct. at 2956–57; *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 448–49, 100 S.Ct. 1223, 1237–38, 63 L.Ed.2d 510 (1980). To the contrary, ad valorem taxation of local property has traditionally been a matter left entirely to the State's discretion.

If this Treaty were given the construction of "party" contended for by Engfar–Manfar, it would follow that unless the States were expressly granted the power to act in some way under the terms of the Treaty, they could not do so. Such an interpretation would lead to absurd conclusions. For instance, since Article XI of the Treaty (tax provision) does not expressly permit the States to impose taxes on Netherlands corporations, they would not be permitted to do so. Only the "Parties" would hold this power. Thus, more favorable tax treatment would be accorded to the Netherland Antille's corporations than that granted to the State's own citizens and corporations. This Treaty does not have any such meaning and we would not be justified in so interpreting it.

We do not perceive any reason why Article XXII should be given so narrow a construction. Such a result was certainly beyond the intentions of the drafters of the Treaty. We conclude that, absent any indication to the contrary, the term "Party" may be defined as the United States and any political subdivision thereunder. We do not say this is true in any case; rather, only where Congress has not sought to preempt that area of law.

---

5. *See* Walker, *Provisions on Companies in United States Commercial Treaties*, 50 Am.J.Int'l. L 373, 388 (1956); *see generally* Walker, *Treaties for the Encouragement and Protection of Foreign Investment: Present United States Practice*, 5 Am.J.Comp.L. 229 (1956). According to the State Department, Mr. Walker was responsible for formulating the postwar form of the Friendship, Commerce and Navigation treaty and negotiated several of the treaties for the U.S. *See Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 181–82 n. 6, 102 S.Ct. 2374, 2377–78 n. 6, 72 L.Ed.2d 765 (1982).

Inasmuch as Tex.Tax Code Ann. § 23.56(3) (Vernon 1982) does not violate or conflict with the terms of the Treaty when applied to Engfar–Manfar, we find the trial court erred in ordering the appraisal of Engfar–Manfar's property pursuant to Tex.Tax Code Ann. ch. 23, subch. D (Vernon 1982). We sustain HCAD's first point of error.

In its second point of error, HCAD contends that the trial court erred in awarding attorney's fees to Engfar–Manfar because there is no statutory authority for the award. Tex.Tax Code Ann. § 42.29 (Vernon Supp.1988) provides for an award of attorney's fees to taxpayers who prevail in an appeal to the district courts under Tex.Tax Code Ann. §§ 42.25, 42.26 (Vernon Supp.1988). In view of our disposition of the case, Engfar–Manfar is not entitled to an award of attorney's fees. *Cf. First City Bank v. Guex,* 677 S.W.2d 25, 30 (Tex.1984); *Uvalde County Appraisal District v. Kincaid,* 720 S.W.2d 678, 681–82 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.). We sustain HCAD's second point of error.

We reverse the judgment of the trial court and render in accordance with the above opinion.