832 So.2d 901 (2002)
Glendell RUSS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D01-0205.
District Court of Appeal of Florida, First District.
December 19, 2002.
*904 Nancy A. Daniels, Public Defender; and Andrew Thomas, Assistant Public Defender, Tallahassee, for Appellant.
Richard E. Doran, Attorney General; and Thomas D. Winokur, Assistant Public Defender, Tallahassee, for Appellee.
BROWNING, J.
Glendell Russ (Appellant), a former city commissioner in Quincy, Gadsden County, was charged with various offenses under the election code relating to absentee ballots cast in the March 1999 city commission race. The jury acquitted Appellant of one count and found him guilty of the other charges. Appellant was adjudicated guilty on the four counts and sentenced to 15 months' imprisonment, suspended for 3 years' probation. Appellant contends that two of the statutes pursuant to which he was charged are unconstitutional, facially and as-applied, due to their vagueness and overbreadth; that the trial court erred in failing to sever the counts by elector and/or transaction; that the court erred in allowing the State to argue and introduce evidence of other crimes or wrongdoing; *905 that the court erred by not granting the motion for judgment of acquittal in its entirety; and that the court erred in denying a request to define "intimidation." Although we find no deficiency in the challenged statutes or error in the trial court's other rulings, we conclude that the trial court reversibly erred by denying defense counsel's relevance objection to questions concerning similar wrongdoing by a third party in a previous election. Accordingly, we are constrained to reverse the convictions and sentences and remand for a new trial.
In its third amended information, the State charged Appellant with criminally abusing the absentee balloting process 1) by interfering with the right to vote (or not vote) by intimidating, threatening, or coercing (or attempting to do so) electors Nancy Williams on March 12, 1999; and Tracy Youman on March 11, 1999 (Counts I & V, respectively), in violation of section 104.0515, Florida Statutes (1999); 2) by corruptly influencing voting by attempting to influence, deceive, or deter, directly or indirectly, by bribery, menace, threat, or other corruption, electors Williams on March 12, 1999; and Youman on March 11, 1999 (Counts II & VI, respectively), in the free exercise of their right to vote, in violation of section 104.061, Florida Statutes (1999); 3) by false swearing between February 1 and March 11, 1999, by procuring Onterrio Ward to swear or affirm falsely to an oath or affirmation in connection with or arising out of voting or elections (Count III), in violation of section 104.011, Florida Statutes (1999); and 4) by committing fraud in connection with casting a vote on March 11, 1999, by perpetrating, attempting to perpetrate, or aiding in the perpetration of fraud in connection with a vote cast, to be cast, or attempted to be cast by elector Ward (Count IV), in violation of section 104.041, Florida Statutes (1999). Given the nature of the charges, the State was allowed to present evidence that Appellant is 6'-4" and weighed 260 pounds.

Constitutional Challenges
Appellant filed several pretrial motions to dismiss certain counts of a series of informations because of the alleged unconstitutionality of vague or overbroad underlying statutes. Citing the right to free speech and Trushin v. State, 425 So.2d 1126 (Fla.1982), Appellant attacked two statutes specifically. Section 104.0515 states in pertinent part:
No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, any other person for the purpose of interfering with the right of such other person to vote or not to vote as that person may choose, or for the purpose of causing such other person to vote for, or not vote for, any candidate for any office at any general, special, or primary election held solely or in part for the purpose of selecting or electing any such candidate.
§ 104.0515(3), Fla. Stat. (1999). Section 104.061 states in pertinent part:
Whoever by bribery, menace, threat, or other corruption whatsoever, either directly or indirectly, attempts to influence, deceive, or deter any elector in voting or interferes with him or her in the free exercise of the elector's right to vote at any election commits a felony of the third degree, ....
§ 104.061(1), Fla. Stat. (1999).
One motion to dismiss sought a declaration that section 104.061 is unconstitutional because the term "menace" is vague and overbroad unless its meaning, in the statute and as-applied, is the same as "threat." Another motion alleged that both statutes improperly prohibit acts that are protected by the Voting Rights Act of 1965. See 42 U.S.C. § 1971(b). Yet another motion sought a declaration that section 104.061 is unconstitutional because the terms *906 "threat" and "other corruption," as well as "menace," are vague and ambiguous. Appellant contended that "menace" also is overbroad. The defense asserted that Appellant's charged conduct constitutes "pure political speech" protected under the United States and Florida Constitutions. Specifically, counsel contended that it is perfectly lawful to exercise free-speech rights to attempt to influence electors in their voting, and that these statutory provisions, if enforced, "would virtually outlaw most if not all politicking." The defense found no vagueness problem with "other corruption whatsoever" in section 104.061(1), so long as the words are construed as offering something of value in exchange for a commitment to vote.
The prosecutor noted that "menace" and "threat" are used in the same provision and have different meanings. The State argued that the statutory terms in question are understandable and not vague. The State notes on appeal that at that point, the trial court appears to have ruled on only one motion when it determined that "menace" and "other corruption" are not unconstitutionally vague.
At the close of the State's case, defense counsel moved for a judgment of acquittal primarily on the ground that the two statutes are unconstitutionally vague. Counsel argued that "intimidate" involves "a very nebulous concept" and that section 104.0515 fails to provide guidance as to what the Legislature intended to define as unlawful or criminal intimidation, threat, or coercion. The defense reiterated its positions that "menace" in section 104.061 is vague and overbroad and that the statute fails to provide adequate notice as to what conduct is proscribed. Counsel asserted that "other corruption" is unconstitutionally vague unless its meaning is limited. The State renewed its argument that the challenged language in both statutes is neither vague nor overbroad. The trial court found no constitutional deficiency in either statute.
Issues involving constitutional challenges to, or construction of, statutes are pure questions of law subject to de novo review. City of Jacksonville v. Cook, 765 So.2d 289 (Fla. 1st DCA 2000), quashed on other grounds, 823 So.2d 86 (Fla.2002); Department of Ins. v. Keys Title and Abstract Co., Inc., 741 So.2d 599 (Fla. 1st DCA 1999). "All statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute bears the burden of demonstrating that it is invalid." Hudson v. State, 825 So.2d 460, 465 (Fla. 1st DCA 2002). For the reasons that follow, we conclude that Appellant has failed to carry his burden of demonstrating that either section 104.0515 or section 104.061 is unconstitutional, facially or as-applied.
The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The benchmark for testing vagueness is whether a criminal statute affords a person of ordinary or common intelligence fair notice of what constitutes forbidden conduct. Bouters v. State, 659 So.2d 235, 238 (Fla.1995) (citing Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)); State v. Hagan, 387 So.2d 943, 945 (Fla. 1980). A vagueness claim "must be evaluated by an examination of the statute in the abstract if the statute is one that purports to regulate constitutionally protected activity such as speech...." Travis v. State, 700 So.2d 104, 105 (Fla. 1st DCA 1997). In construing a penal statute against an attack of vagueness, any doubt *907 should be resolved in favor of the defendant and against the State. State v. Wershow, 343 So.2d 605, 608 (Fla.1977). "[W]here a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense." State v. Mitro, 700 So.2d 643, 645 (Fla.1997). The State correctly notes that none of the words employed in the two challenged provisions have technical or specialized definitions; each of the words is used as it is understood in common parlance. Both statutes should be given their plain meaning, for the language in each is clear and unambiguous and conveys a clear, definite meaning. See Florida Hosp. v. State of Fla. Agency for Health Care Admin., 823 So.2d 844 (Fla. 1st DCA 2002). In summary, the words in question "convey[] a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice." Hagan, 387 So.2d at 945. Accordingly, Appellant has not demonstrated a problem with vagueness in either section 104.0515 or section 104.061, facially or as-applied.
The overbreadth doctrine applies to statutes that are "susceptible of application" to constitutionally protected conduct, e.g., protected speech. Carricarte v. State, 384 So.2d 1261, 1262 (Fla.1980). "A `facial' challenge, in this context, means a claim that the law is `invalid in toto ___ and therefore incapable of any valid application.' " State v. Kahles, 644 So.2d 512, 512 n. 5 (Fla. 4th DCA 1994) (quoting Steffel v. Thompson, 415 U.S. 452, 474, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)). In a facial challenge to a law's overbreadth, it must be determined "whether the enactment reaches a substantial amount of constitutionally protected conduct." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Given the express limiting language in the two provisions, the State correctly notes that the statutes clearly prohibit conduct that could never be considered constitutionally protected. In essence, section 104.0515(3) proscribes a person from intimidating, threatening, or coercing anyone else for the purpose of interfering with the other person's right to vote or not to vote, or for the purpose of causing the other person to vote or not to vote for any candidate for any office in any election held for the purpose of selecting or electing any such candidate. Similarly, section 104.061(1) criminalizes the use of bribery, menace, threat, or other corruption, whether direct or indirect, in an attempt to influence, deceive, or deter any elector in voting or to interfere with the elector in the free exercise of the elector's right to vote at any election. Thus, Appellant has failed to satisfy his burden to show that either statute, facially, or as-applied, infringes upon constitutionally protected conduct. The trial court correctly found no constitutional deficiency.

Failure to Sever Counts
Appellant asserts that the trial court reversibly erred by failing to sever the counts by elector and/or transaction. This issue was not preserved for appellate review. Prior to the State's filing the third amended information, defense counsel moved pursuant to Florida Rules of Criminal Procedure 3.150(a) and 3.152(a) and Wright v. State, 586 So.2d 1024 (Fla. 1991), to sever the counts by elector and/or transaction, on the ground that the acts did not occur within a single episode, i.e., they were unrelated because they were not the same act, were not part of the same transaction, and were not based on two or more connected acts or transactions. The alleged offenses involved three victims (after the additional charges were dropped).
Opposing the motion, the prosecutor argued that all the counts were properly *908 joined because the temporal range of the alleged crimes was very short, the geographical scope of the allegations was one small district in Quincy, the common episode was the March 1999 city commission election, and the context of all the counts was the influencing of (or attempt to influence) the outcome of one election in favor of Appellant's chosen candidate. After the trial court orally denied the motion, defense counsel waited until the close of all the evidence to seek severance. That belated request to sever, made after Appellant had been tried on all counts, did not afford the trial court timely notice of the question to be resolved. Fla. R.Crim. P. 3.152(a)(2). See State v. Stell, 407 So.2d 642, 643 (Fla. 4th DCA 1981) (noting that the filing of a signed, sworn amended information extinguishes the previous one).
Despite the defense's failure to preserve this question, we address the merits for the benefit of the trial court, in light of the fact that we are reversing Appellant's convictions and remanding for a new trial. The proper standard of review of the denial of a motion to sever is abuse of discretion. State v. Vazquez, 419 So.2d 1088, 1090 (Fla.1982). For the reasons set forth by the State in opposition to the motion to sever, the trial court did not abuse its discretion in denying the motion. See Ellis v. State, 622 So.2d 991, 999 (Fla. 1993) (citing Wright v. State, 586 So.2d 1024, 1029-30 (Fla.1991)); Garcia v. State, 568 So.2d 896, 899 (Fla.1990) (stating that in determining propriety of joinder or severance, courts may consider geographical and temporal association, nature of crimes, and manner in which they were committed).

Evidence of Other Crimes or Wrongdoing
Appellant contends that the trial court reversibly erred by allowing the State to introduce and discuss evidence of other crimes or wrongdoing. Generally, the admission or exclusion of evidence is reviewed for abuse of discretion. Howard v. State, 616 So.2d 484, 485 (Fla. 1st DCA 1993). However, the erroneous admission of collateral wrongdoing is presumptively harmful. Keen v. State, 775 So.2d 263, 275 (Fla.2000); Czubak v. State, 570 So.2d 925, 928 (Fla.1990).
In his opening statement, the prosecutor discussed the expected evidence relating to Counts I and II, involving Ms. Williams. The prosecutor indicated the evidence would show that in Quincy on March 12, 1999, Virginia Davis visited the residence of her elderly mother, Ms. Williams. As Ms. Davis entered the residence, she observed Appellant pointing at some absentee voting materials in front of the seated Ms. Williams, who was asking where she was supposed to vote. The young woman questioned Appellant's being there and told him that he should not be doing that. Ms. Davis immediately went to the nearby home of the District I incumbent, Keith Dowdell, and reported what she had just seen. By the time Mr. Dowdell and Ms. Davis got back to Ms. Williams' residence, Appellant had left. Ms. Williams said that she had wanted to vote for Mr. Dowdell but that Appellant had made her vote for an opposing candidate, Gary Baker.
At that point, Mr. Dowdell saw what he believed to be Appellant's automobile parked outside the nearby home of another elderly woman, Susie Rogers. Although Appellant had supported Mr. Dowdell in a previous election, Mr. Dowdell knew that Appellant was supporting opponent Mr. Baker in the March 1999 campaign. When the prosecutor stated that the evidence would show that Mr. Dowdell went to Ms. Rogers' house and knocked on the door, defense counsel objected on the ground that the one count involving Ms. Rogers had been dropped and anything that happened inside her residence was not relevant. The objection was denied. *909 The prosecutor said the evidence would show that as Mr. Dowdell entered the residence, he saw Appellant marking some absentee voting materials. Appellant immediately stood up and seated Ms. Rogers next to the materials. Mr. Dowdell heard her ask Appellant whom she was supposed to vote for. After a confrontation ensued between the men, Mr. Dowdell reported the incident to the Office of the Supervisor of Elections, and then to the Quincy Police Department, and filed a complaint with the Florida Elections Commission. During the course of the investigation, the police and the Florida Department of Law Enforcement gathered information that led to the filing of these criminal charges against Appellant.
In the direct examination of Mr. Dowdell concerning his arrival at Ms. Rogers' residence, an objection was made that the State would be eliciting "similar fact" evidence regarding Appellant's actions at that lady's home that had no bearing on whether Appellant had intimidated, threatened, coerced, menaced, bribed, or otherwise committed a crime in dealing with Ms. Williams. The State responded that the testimony would corroborate Ms. Davis' testimony about what had happened at Ms. Williams' house and was relevant to the charges. While finding the expected evidence relevant, the trial court sustained the objection on the ground the evidence was overly prejudicial. We find no abuse of discretion in the trial court's rulings regarding the evidence relating to Ms. Rogers. The court was not inconsistent in denying the objection to the prosecutor's comments during opening statements, and then sustaining the objection during the direct examination of Mr. Dowdell. Opening statements do not constitute evidence, Whitted v. State, 362 So.2d 668, 673 (Fla. 1978), and the jury was instructed accordingly. When the State sought to elicit the offending testimony from Mr. Dowdell, the court refused to allow it. If the defense believed that the State's reference in opening statements had so tainted the fairness of the trial, then it was incumbent for Appellant to move for a mistrial or a new trial on that ground after the objection was sustained. See Gray v. State, 640 So.2d 186, 193 (Fla. 1st DCA 1994) (stating failure to request curative instruction or mistrial after objection to evidence sustained waives review). Appellant has waived review of this claim.
During the cross-examination of Mr. Dowdell, defense counsel asked several questions relating to the witness' complaint against Appellant to the Florida Elections Commission and the filing of a protest of the election with the Gadsden County Canvassing Board regarding the absentee ballots. Although the witness could not remember whether the protest was his or someone else's, the questions clearly related to challenges to the 1999 election, and the reasonable implication was that the challenges related at least partly to activities in which Appellant was allegedly involved and that Mr. Dowdell might harbor some bias against Appellant. The State was entitled to rebut this suggestion by showing that Mr. Dowdell had an appropriate basis to bring these challenges and that they were not brought solely because of some animus against Appellant. In that regard, the State (over a relevance objection) was allowed to introduce a document reflecting the total number of machine votes and absentee votes and a breakdown of how many of each category of votes were cast for each candidate. The tally sheets showed that Mr. Dowdell and Mr. Baker received 243 and 47 machine votes, respectively; and 15 and 41 absentee votes, respectively. Defense counsel argued that the raw vote numbers are collateral and that whether or not Mr. Baker "got an extraordinary number of absentee ballots" is not relevant to the charges. Given defense counsel's apparent effort to suggest a particular bias or motive *910 on Mr. Dowdell's part, we cannot say that allowing the tally sheets into evidence constitutes an abuse of discretion.
During defense counsel's cross-examination of Mr. Dowdell, the witness testified that he and Appellant formerly had been "somewhat" political allies serving together on the Quincy City Commission. Mr. Dowdell admitted that Appellant had assisted him during the successful 1996 campaign, during which some absentee ballots were cast for Mr. Dowdell. The witness acknowledged that while he was not personally involved in the 1996 campaign directed towards absentee voters, persons in his campaign, including Appellant, had solicited votes from electors who voted absentee. On redirect examination, the prosecutor asked Mr. Dowdell the following question: "In the absentee voting of the 1996 election that Mr. Glendell Russ was assisting you on, was McNeal Branch charged with a violation of the laws involving absentee voting in the 1996 election by fraudulently" Defense counsel immediately objected on the ground of relevance, whereupon the State argued the defense had "opened the door" by questioning the witness about Appellant's having assisted Mr. Dowdell in the absentee voting process during the 1996 election. The objection was overruled. When the prosecutor asked whether Ms. Branch had been charged with fraudulent notary violations involving absentee voting materials collected by Appellant and Ms. Branch in the 1996 campaign, the witness answered: "I don't know the exact charges, but she were [sic]." Defense counsel objected pursuant to section 90.403, Florida Statutes, and argued that the charging of Ms. Branch in another case could not be used as evidence of criminal activity in Appellant's case and was highly prejudicial despite its limited probative value. While acknowledging on the record that he was "inclined to agree" with defense counsel's position, the trial court overruled the objection. The State then elicited testimony that Ms. Branch had been charged and convicted of some violation of the law involving absentee voting.
Appellant contends that the trial court erred by allowing the State to pursue the line of questioning about Ms. Branch's charge and conviction on the ground that the defense had opened the door by cross-examining Mr. Dowdell regarding the fact that Appellant had collected absentee ballots for him in the 1996 election. We agree this ruling is erroneous and constitutes an abuse of discretion. "As an evidentiary principle, the concept of `opening the door' allows the admission of otherwise inadmissible testimony to `qualify, explain, or limit' testimony or evidence previously admitted." Rodriguez v. State, 753 So.2d 29, 42 (Fla.2000). As to the testimony concerning Ms. Branch and the 1996 campaign, the State suggested that either Mr. Dowdell was implicated in the same activity for which Appellant was on trial or Mr. Dowdell had previously supported such activity when it was done on his behalf. The testimony initially elicited by defense counsel merely established that Mr. Dowdell had a campaign for absentee votes, that he had received some, and that Appellant had been a part of the campaign to solicit absentee votes during the 1996 campaign. That testimony is totally unrelated to the criminal charge and conviction of Ms. Branch, who is another individual who worked in the 1996 campaign. Thus, the testimony about Ms. Branch's conviction for conduct similar to that for which Appellant was on trial neither qualified, explained, nor limited Mr. Dowdell's prior testimony. Appellant notes that if anything, the objectionable testimony relates to prior bad acts one step removed, i.e., a prior bad act not of Appellant, but of someone with whom he had been associated. The testimony initially elicited by the defense was not misleading or incorrect. The testimony about Ms. Branch's charge *911 and conviction did nothing to rebut the facts that Mr. Dowdell had received some absentee votes in 1996, that some of those votes doubtless resulted from a campaign directed towards absentee voters, and that Appellant was one of those persons soliciting absentee votes then. Defense counsel's questioning of Mr. Dowdell did not open the door to testimony about Ms. Branch's charge and conviction. See Thompson v. State, 615 So.2d 737, 743-44 (Fla. 1st DCA 1993) (finding defense question about where witness got information for arrest warrant did not open door to testimony regarding what that information was). The State has not shown that this erroneous ruling is harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). The defense vigorously asserted that all of Appellant's acts occupied the lawful side of the line demarcating protected political speech from criminal abuse of the absentee balloting process. The jury acquitted Appellant of Count VI. Therefore, Appellant is entitled to a new trial.

Denial of Motion for Judgment of Acquittal
Appellant contends that the trial court erred in denying his motion for judgment of acquittal on Counts I, II, III, and V of the third amended information. Having reviewed that ruling de novo, in accordance with Jones v. State, 790 So.2d 1194, 1196 (Fla. 1st DCA 2001) (rev'd en banc), we find no error in the trial court's ruling.

Refusal to Give Special Jury Instruction
Defense counsel asked the trial court to give Standard Jury Instruction 47.2 (of the Eleventh Circuit Court of Appeals) employing an objective standard and defining "intimidate" as "to intentionally say or do something that would cause a person of ordinary sensibility to be fearful of bodily harm." The prosecutor successfully argued that "intimidation" is commonly understood by juries, without having to be defined by the court, and that the limiting definition of "intimidate" offered by the defense constituted only assault, whereas intimidation does not necessarily involve fear of physical harm or violence. A trial court is under no obligation to define terms in common use and generally understood by the average person. See United States v. Vega-Figueroa, 234 F.3d 744, 757 (1st Cir.2000). As was noted, supra, "intimidate" does not have a technical or unconventional meaning in section 104.0515(3). Accordingly, the court did not abuse its discretion in refusing to give a misleading jury instruction.
We REVERSE Appellant's conviction and REMAND for a new trial.
MINER and WEBSTER, JJ. CONCUR.