901 So.2d 201 (2005)
STATE of Florida, Appellant,
v.
Roxie Lynn HANNA, Appellee.
No. 5D03-4109.
District Court of Appeal of Florida, Fifth District.
March 24, 2005.
Rehearing Denied April 27, 2005.
*203 Charles J. Crist, Jr., Attorney General, Tallahassee, and Wesley Heidt, Assistant Attorney General, Daytona Beach, for Appellant.
Richard L. Wilson, Orlando, for Appellee.
Joel D. Prinsell, Senior Assistant County Attorney and Linda Brehmer Lanosa, Assistant County Attorney, Orlando, Amicus Curiae for State of Florida.
PER CURIAM.
The State of Florida charged Roxie Lynn Hanna in a fifty-two-count information with racketeering, conspiracy to commit racketeering, operating an organized scheme to defraud, filing a false or fraudulent tax return, grand theft, sale of obscene material, and, relevant to this appeal, four counts of operating an unlicensed adult book store.[1] The charges against Hanna arose from the operation of Jerry's General Store, which the State alleged was an unlicensed adult book store. Hanna moved to dismiss the charges, contending that the definition of "adult book store" in Orange County's *204 Adult Entertainment Code was unconstitutionally vague, and that the Code failed to provide for prompt judicial review in the event an application for an adult entertainment license was denied. Finding merit in those arguments, the trial court dismissed the four counts of operating an unlicensed adult book store. The State of Florida now appeals that order. For the reasons that follow, we reverse, and remand the matter with instructions that the dismissed charges be reinstated.

STANDARD OF REVIEW
The interpretation of a statute or an ordinance is a purely legal matter and is subject to de novo review. Racetrac Petroleum v. Delco Oil, Inc., 721 So.2d 376, 377 (Fla. 5th DCA 1998). Statutes and ordinances are presumed to be constitutional, and all reasonable doubts regarding the statute or ordinance must be resolved in favor of constitutionality. Wright v. State, 739 So.2d 1230, 1231 (Fla. 1st DCA 1999) (citing State v. Kinner, 398 So.2d 1360 (Fla.1981); Gammon v. Cobb, 335 So.2d 261 (Fla.1976)). "Accordingly, a defendant who challenges the constitutional validity of a statute bears a heavy burden of establishing its invalidity." Wright, 739 So.2d at 1231 (citing Milliken v. State, 131 So.2d 889 (Fla.1961)).
However, an exception to the general constitutional presumption enjoyed by statutes and ordinances exists respecting regulations affecting First Amendment rights. "Content-based prohibitions, enforced by severe criminal penalties, have the constant potential to be a repressive force in the lives and thoughts of a free people. To guard against that threat, the constitution demands that content-based restrictions on free speech be presumed invalid, ... and that the Government bear the burden of showing their constitutionality." Ashcroft v. Am. Civil Liberties Union, 542 U.S. 656, ___, 124 S.Ct. 2783, 2788, 159 L.Ed.2d 690 (2004) (internal citation omitted). By contrast, content neutral, time and place restrictions that incidentally impact First Amendment rights enjoy the presumption of constitutionality.

THE ADULT ENTERTAINMENT CODE
The Orange County Adult Entertainment Code is a comprehensive licensing, zoning and regulatory ordinance governing the ownership, operation and location of all adult entertainment businesses in the county. Section 3-26 of the Code requires that any person operating an adult entertainment business apply for and obtain an adult entertainment license from the Orange County tax collector:
Section 3-26. Required; classifications.
(a) Requirement. No adult entertainment establishment shall be permitted to operate without having been first granted an adult entertainment license by the tax collector under this chapter.
Orange County, Fla., Code § 3-26 (2002). It is a criminal offense to operate any adult entertainment business without the required license, as explained in section 3-127(1):
Section 3-127. Operation of establishment without valid adult entertainment license.
It shall be unlawful for any person to be an operator of an adult entertainment establishment where the person knows or should know:
(1) That the establishment does not have an adult entertainment license for any applicable classification.
Orange County, Fla., Code § 3-127 (2002).
Section 3-6 of the Code defines "adult bookstore" as follows:

*205 Adult bookstore shall mean an establishment where a substantial portion of the items, material, goods or products sold or rented, offered for sale or rent, displayed or exhibited constitutes adult material.
(1) For purposes of the definition of "adult bookstore," the term "substantial portion" means more than an insignificant or incidental portion. The term "substantial portion" does not necessarily mean a majority or predominant amount.
(2) Whether the adult material constitutes a "substantial portion" of the items sold, rented, offered for sale or rent, displayed, or exhibited at a commercial establishment does not depend upon a specific percentage or ratio.
(3) Whether the adult material that is "sold or rented, offered for sale or rent, displayed, or exhibited" constitutes a "substantial portion" may be determined by evidence relating to some, but not necessarily all, of the following factors:
a. The amount of floor space, wall space, or display area dedicated to adult material;
b. The amount of adult material sold or rented, offered for sale or rent, displayed, or exhibited in any category or type of product;
c. The visibility, prominence, or accessibility to customers of adult material;
d. The retail value of the adult material sold or rented, offered for sale or rent, displayed, or exhibited;
e. Whether minors are excluded from the establishment;
f. Any other fact, circumstance, or evidence which is relevant to demonstrate the type and quantity of merchandise that the establishment sells, rents, offers for sale or rent, displays or exhibits.
(4) Packages, boxes, containers, or the like, displaying photographs or text on the outside thereof that fall under the definition of adult material, shall be considered as a category or type of adult material separate and distinct from their contents (or former contents) that may likewise fall under the definition of adult material.
Orange County, Fla., Code § 3-6 (2002). Section 3-6 defines "adult material" as:

Adult material shall mean any one (1) or more of the following regardless of whether it is new or used:
(1) Books, magazines, periodicals or other printed matter, or photographs, films, motion pictures, videotapes, slides, computer digital graphic recordings or other visual representations, or compact disks, audio recordings, or other audio matter, which have as their primary or dominant theme matter depicting, illustrating, describing or relating to specified sexual activities or specified anatomical areas; or
(2) Instruments, novelties, devices or paraphernalia which are designed for use in connection with specified sexual activities, excluding bona fide birth control devices.
Id.

VAGUENESS
To be considered an "adult bookstore" in Orange County, a "substantial portion" of the establishment's merchandise must be "adult material." Hanna maintains that this is an unconstitutionally vague standard as it does not adequately define "substantial portion" and provides only a number of "factors" that the State may consider in deciding whether a particular *206 business is an adult bookstore. We disagree. The definitions contained in the Code are reasonably specific and precise, bearing in mind that unavoidable imprecision is not fatal and celestial precision is not necessary. See Miller v. California, 413 U.S. 15, 27-28 n. 10, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Roth v. United States, 354 U.S. 476, 491-92, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Hart Book Stores, Inc. v. Edmisten, 612 F.2d 821, 833 (4th Cir.1979).
To avoid an attack on grounds of vagueness, an ordinance must define the criminal offense sufficiently so that ordinary people can understand what conduct is prohibited. See Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Russ v. State, 832 So.2d 901, 906 (Fla. 1st DCA 2002), review denied, 845 So.2d 892 (Fla.2003). It is not necessary for an ordinance to clarify every possible ambiguity in order to defeat a facial constitutional challenge. See Rahmani v. State, 748 S.W.2d 618, 626 (Tex.App.Ct.1988). Rather, the principal inquiry is whether the law affords fair warning of what is proscribed. Id. at 624.
Section 3-6 of the Code explains that "substantial portion" for purposes of the definition of "adult bookstore," is "more than an insignificant or incidental portion," but not necessarily "a majority or predominant amount." Orange County, Fla., Code 3-6(1) & (2) (2002). Many ordinances incorporating the terms "substantial or significant" in the definition of "adult bookstores" have passed constitutional muster. See, e.g., ILQ Invs., Inc. v. City of Rochester, 25 F.3d 1413, 1419 (8th Cir.1994); 15192 Thirteen Mile Rd. v. City of Warren, 626 F.Supp. 803, 820-21 (E.D.Mich.1985); Golden Triangle News, Inc. v. Corbett, 689 A.2d 974, 984-85 (Pa.Cmwlth.1997); City of Chicago v. Scandia Books, Inc., 102 Ill.App.3d 292, 58 Ill.Dec. 72, 430 N.E.2d 14, 18 (1981) (stating that "substantial" as used in the definition of adult bookstores is not so indefinite as to render ordinance void and unenforceable, and explaining that the term has been construed as having an ascertainable meaning in numerous statutory schemes); see also Mom N Pops, Inc. v. City of Charlotte, 979 F.Supp. 372 (W.D.N.C.1997) (court rejected vagueness and overbreadth challenge of ordinance with "substantial and significant" portion language), affirmed, 162 F.3d 1155 (4th Cir.1998)
The cases upholding statutes and ordinances using the term "substantial" or "significant" explain that:
A reasonable person, using common sense, is not required to guess in order to ascertain what constitutes an "adult bookstore," "sexual activities," or "well-lighted" premises. For instance, the Act indicates that in order to be well lighted, adult-oriented establishments must be equipped with overhead lighting fixtures which provide a specified quantity of light in the areas where patrons are permitted access. See 68 Pa.C.S. 5503(d). Thus, the term "well lighted" is not vague. Similarly, the terms "substantial" and "significant" have recognized meanings in the English language and the use of such in the definition of "adult bookstore" does not render it vague merely because a percentage of business in one type of item is not specified. Limiting the definition of "adult bookstore" to establishments that meet a specific sales percentage would frustrate the Act's purpose by drawing arbitrary classifications.
Corbett, 689 A.2d at 984-85 (footnote omitted). They also acknowledge that:
As Judge Kennedy noted in Nortown Theatre Incorporated v. Gribbs, 373 F.Supp. 363, 367 (E.D.Mich.1974), aff'd on other grounds sub nom., Young v. *207 American Mini-Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)[,] the word "substantial" as used in the definition of Adult Book Store is not so indefinite as to render the Ordinance void and unenforceable. That term has been construed as having an ascertainable meaning in numerous statutory schemes. See, e.g., Busch v. Service Plastics, Inc., 261 F.Supp. 136, 141 (N.D.Ohio 1966); Roop v. Richardson, 324 F.Supp. 1130 (W.D.Va.1971); State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 69 N.W.2d 217, 224 [(1955)].
In addition to the authority noted by Judge Kennedy, the term "substantial" appears in the United States Code some 1157 times. More to the point, the phrase "substantial portion" appears 51 times in the United States Code and is included in various portions of the patent laws, securities laws, and civil rights laws. The provisions of the 1964 Civil Rights Act that deal with public accommodations, for example, are made applicable to any business that affects interstate commerce. A business will be said to have an affect on commerce if "a substantial portion of the food which it serves ... has moved in commerce." 1964 Civil Rights Act, 42 U.S.C.A.2000a(c) (1976).
15192 Thirteen Mile Rd., 626 F.Supp. at 820-21.
Accordingly, we conclude that the definition of "adult book store" found in section 3-6 of the Code is not unconstitutionally vague. Any ambiguity in the meaning of these terms as applied, is, as the Supreme Court held in Young v. American Mini Theatres, 427 U.S. 50, 61, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), "readily subject to a narrowing construction by the state courts."

PRIOR RESTRAINT AND PROMPT JUDICIAL REVIEW
The State next argues that the trial court erred in determining that the Code constituted a prior restraint on protected communication and failed to provide for prompt judicial review of an adverse licensing decision, thereby, rendering it unconstitutional. The State contends that the licensing requirement in the Code is a proper, content neutral ordinance, regulating only the time, place, and manner of the operation of an adult business. The State maintains that adult bookstores are allowed and do operate in Orange County. Thus, the State argues that the Code's licensing procedure is not a prior restraint, but, asserts that if the Code is found to be a prior restraint, no constitutional violation occurs because "prompt judicial review" of an adverse license decision is available.[2]
The Code provides that after a license application is filed, various county departments, along with the Orange County Sheriff's Office, inspect the proposed "adult bookstore" and investigate the background of the applicant. Orange County, Fla., Code 3-9, 3-28 (2002). Each department then reports its findings to the tax collector. Orange County, Fla., Code *208 3-28 (2002). Within thirty days of filing the application, the tax collector must decide whether to grant or deny the license. Id. If the license is denied, section 3-10 of the Code allows the applicant to file "any appropriate pleadings" in a court of competent jurisdiction. Orange County, Fla., Code 3-10 (2002).[3] However, the Code makes no provision for an administrative hearing. As a result, Hanna contended, and the trial court agreed, that the Code fails to provide for any judicial review of a license denial, much less prompt review.
The First Amendment is implicated when the government requires a bookstore, newsstand, theater, or an adult business to obtain a license before it can begin to operate. See, e.g., City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (acknowledging that city ordinance regulating "adult" bookstores selling books and videocassettes depicting sexual activities implicates First Amendment rights); Young (recognizing that non-obscene, sexually explicit "adult" motion pictures are protected by First Amendment). Consequently, we agree with Hanna that the Code constitutes a prior restraint of protected communication, at least as it relates to the sale of adult books and videos.[4]
The Supreme Court has concluded that the Constitution allows the licensing of adult entertainment establishments so long as the licensing scheme does not vest unbridled discretion in the government officials charged with the responsibility of granting or denying the license. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 225-26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Additionally, the licensing scheme may not allow the decision maker unlimited time to decide on matters affecting the license; lest there be the "risk of indefinitely suppressing speech." Id. at 226-27; Freedman v. Maryland, 380 U.S. 51, 58-60, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). To ensure that the decision time is limited (1) the licensor must decide whether to issue the license within a specified and reasonable time period; and (2) prompt judicial review of the denial of a license must be available. See FW/PBS, Inc., 493 U.S. at 228, 110 S.Ct. 596;[5]Freedman, 380 U.S. *209 at 58-60, 85 S.Ct. 734. Here, the thirty-day window for a decision on an adult entertainment license found in Orange County's Code is reasonable. But whether the Code allows for prompt judicial review of an adverse licensing decision is a closer question.
In City of Littleton, Colorado v. Z.J. Gifts, D-4., L.L.C., 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004), the Supreme Court concluded that when the government denies a license for an adult entertainment business, the First Amendment requires both prompt access to the courts to review the denial, and a prompt decision from the courts regarding the propriety of the denial. Such requirements give effect to the "core policy" espoused in FW/PBS, Inc., namely, that in order to avoid the unconstitutional suppression of protected speech, the government must avoid undue judicial, as well as administrative, delay in rendering decisions on adult entertainment business licenses. City of Littleton, 124 S.Ct. at 2224 (citing FW/PBS, Inc., 493 U.S. at 228, 110 S.Ct. 596). As a result, we must determine if an unsuccessful applicant for an adult entertainment license can get the courts to promptly review and decide the propriety of a license denial, as required by the City of Littleton.
To resolve that question, we must examine what jurisdiction the courts have to review administrative and executive decisions. The parties agree that an adverse licensing decision cannot be reviewed in the circuit court by direct appeal or certiorari. Direct appellate review is unavailable because circuit courts only have appellate jurisdiction under the Florida Constitution to engage in "direct review of administrative action as prescribed by general law." Art. V, § 5(b), Fla. Const. No general law authorizes such review here. Certiorari review is unavailable because only those administrative orders characterized as "quasi-judicial" are within the appellate jurisdiction of the circuit court. See Broward County v. G.B.V. Int'l, Ltd., 787 So.2d 838, 843 (Fla.2001); see also Phillip J. Padavano, Florida Appellate Practice, § 9.7, at 160 (2d ed. 1997). A judgment is judicial or quasi-judicial, as distinguished from executive, when notice and hearing are required and the judgment of the administrative agency is contingent on the showing made at the hearing. DeGroot v. Sheffield, 95 So.2d 912, 915 (Fla.1957). That is not the case here.
Further, certiorari is a record-based review procedure. Here, there is no record to review. Instead, under the Code, a single city official, the tax collector, makes an executive decision to grant or deny an application for an adult entertainment license. Because no hearing is held, the circuit court cannot review the tax collector's decision and determine whether that decision was based on substantial, competent evidence. As a practical matter, since there is no hearing, there is nothing for the circuit court to review. See Pleasures II Adult Video, Inc. v. City of Sarasota, 833 So.2d 185, 189 (Fla. 2d DCA 2002).
While the State concedes that neither a direct appeal or certiorari review is available to an unsuccessful adult entertainment license applicant, it argues that an *210 original action brought in the circuit court seeking a declaratory judgment under chapter 86, Florida Statutes, provides judicial review sufficient to pass constitutional muster. We agree. Section 86.021, Florida Statutes (2004), provides in part:
Any person claiming to be interested or who may be in doubt about his or her rights under ... any regulation made under statutory authority, or by municipal ordinance ... may have determined any question of construction or validity arising under such statute, regulation, [or municipal ordinance] ... and obtain a declaration of rights, status or other equitable or legal relations there under.
We do not construe the mandate in City of Littleton that courts make prompt decisions when reviewing adverse adult entertainment license decisions to allow only appellate review. We believe that an original action in the circuit court can provide adequate safeguards "as long as the courts remain sensitive to the need to prevent First Amendment harms and administer those procedures accordingly. And whether the courts do so is a matter normally fit for a case-by-case determination rather than a facial challenge." City of Littleton, 124 S.Ct. at 2221-22.
For the foregoing reasons, we reverse the trial court's order and remand this matter with directions that the four counts in question be reinstated.
REVERSED and REMANDED.
THOMPSON and PALMER, JJ., concur.
ORFINGER, J., concurs in part and dissents in part, with opinion.
ORFINGER, J., concurring in part and dissenting in part.
I agree with that portion of the Court's opinion concluding that Orange County's Adult Entertainment Code is not unconstitutionally vague. However, I disagree with the majority's conclusion that an original action in the circuit court provides an unsuccessful adult entertainment license applicant an avenue for prompt judicial review of the denial as required by Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), or a prompt judicial decision, as required by City of Littleton, Colorado v. Z.J. Gifts D-4., L.L.C., 541 U.S. 774, 124 S.Ct. 2219, 159 L.Ed.2d 84 (2004). By requiring an unsuccessful applicant to bring an original action in the circuit court, a judicial decision could well be delayed for months, if not years. "A delay in issuing a judicial decision, no less than a delay in obtaining access to a court, can prevent a license from being `issued within a reasonable period of time.'" Id. at 2224.
In considering the adequacy of judicial review available to an unsuccessful license applicant, we must look at the backdrop on which the Supreme Court was writing when it considered the ordinance in the City of Littleton. To be sure, the City of Littleton's adult entertainment ordinance is very similar to Orange County's Code. There is, however, one important difference. Under the City of Littleton's ordinance, if the city clerk denies a license, the applicant has a right to a hearing before the city manager. At that hearing, the city manager considers such evidence as the parties wish to present relevant to the denial of the license application by the city clerk. See Littleton, Colo., Ordinance § 3-14-8(B) (2003). Consequently, a Colorado court, reviewing the denial of an application for an adult entertainment license, has the benefit of a record of the quasi-judicial proceeding conducted by the city manager when reviewing the executive decision of the licensing official.
*211 In contrast, under Orange County's Adult Entertainment Code, the tax collector makes an executive decision to grant or deny a license application. No administrative hearing is held so "the circuit court [cannot] determine whether the decision was based on substantial, competent evidence. As a practical matter, when an executive makes a decision without conducting a hearing, there is nothing for the circuit court to review."[1]Pleasures II Adult Video, Inc. v. The City of Sarasota, 833 So.2d 185, 189 (Fla. 2d DCA 2002).
Like the City of Littleton's adult entertainment ordinance, Orange County's Adult Entertainment Code utilizes "reasonably objective, non-discretionary criteria" when considering an adult entertainment license application. City of Littleton, 124 S.Ct. at 2225. Nonetheless, issues that require a factual determination could arise. By way of example, assume an applicant is denied a license because the tax collector concludes that he is a convicted felon. The applicant has no administrative forum to attempt to demonstrate that it was simply someone else with the same name and not the applicant. Consequently, the unsuccessful applicant's only remedy would be to file an original declaratory relief action in the circuit court, a remedy that is neither prompt nor inexpensive.[2]
If the Code provided for an administrative hearing to resolve factual disputes like the City of Littleton's, common law certiorari would be available to review that quasi-judicial decision. Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995). In that instance, the circuit court functions as an appellate court, and does not reweigh the evidence or substitute its judgment for that of the agency. Id. at 530. The court's inquiry would be limited to: (1) whether procedural due process was accorded the applicant; (2) whether the essential requirements of law have been observed; and (3) whether the administrative findings and judgment are supported by competent, substantial evidence. Id. That procedure would satisfy the requirement of prompt judicial review. This is precisely the nature of expedited review that the courts should provide an unsuccessful license applicant.
Meaningful access to the courts and a prompt judicial decision is not possible unless the Code provides for a quasi-judicial hearing so that a record can be produced for the circuit court to review. If access to judicial review is stymied by the lack of an administrative record, so would a prompt judicial determination.
For these reasons, I dissent from that portion of the majority's opinion concluding that the Code provides for prompt *212 judicial review of an adverse licensing decision.
NOTES
[1] Only counts 48, 49, 50 and 51, charging Hanna with the operation of an unlicensed adult book store, are the subject of this appeal.
[2] It is unclear if Hanna ever applied for an adult entertainment license. Regardless, Hanna has standing to bring a facial challenge to a licensing ordinance even if she has not applied for and been denied a license. See, e.g., Ass'n of Cmty. Orgs. for Reform Now v. Municipality of Golden, Colo., 744 F.2d 739, 744 (10th Cir.1984) ("Applying for and being denied a license ... is not a condition precedent to bringing a facial challenge to an unconstitutional law."); see also Freedman v. Maryland, 380 U.S. 51, 55-56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (finding that plaintiff who did not seek censor's approval had standing to mount facial attack on censorship scheme that had inadequate procedural safeguards).
[3] Specifically, that section provides:

Section 3-10. Review of decisions by tax collector.
Any decision of the tax collector pursuant to article II of this chapter, or any failure of the tax collector to render a decision in accordance with the outermost time requirements of article II of this chapter, or any failure of the tax collector to render a decision in accordance with the outermost time requirements of article II of this chapter, may be immediately reviewed as a matter of right by a court of competent jurisdiction upon the filing of an appropriate pleading by an aggrieved party.
Orange County, Fla., Code § 3-10 (2002).
[4] The Code also regulates the sale of sexual novelties, which is not constitutionally protected speech. See, e.g., Williams v. Attorney Gen. of Ala., 378 F.3d 1232 (11th Cir.2004) (holding that Alabama anti-obscenity statute prohibiting the commercial distribution of any device primarily used for stimulation of the human genitals did not violate due process, as applied to users and vendors of such devices); Williams v. Pryor, 240 F.3d 944 (11th Cir.2001) (applying Alabama and federal law, and upholding Alabama criminal statute prohibiting the commercial distribution of sexual "obscene" devices).
[5] In FW/PBS, Inc. v. Dallas, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the Supreme Court held that a municipal licensing scheme that regulates adult bookstore-type businesses where the materials are constitutionally protected, is permissible as a prior restraint if there are safeguards adequate to minimize the possibility that the licensing procedures will be used to suppress speech. Among the requirements set out by the Supreme Court for licensing ordinances to pass constitutional muster are that the regulatory scheme cannot place "unbridled discretion in the hands of a government official or agency." Such unbridled discretion when vested in a government official amounts to unconstitutional censorship or prior restraint upon the exercise of free speech. Other requirements for ordinances of this nature include limits on the time for a decision by the decision-maker, and the maintenance of the status quo by the applicant until a final licensing decision issues. Finally, the regulatory scheme must provide for "prompt judicial review" in the event that a license is erroneously denied.
[1] Interestingly, an applicant who is denied a rave club license in Orange County has a right to an administrative hearing but no similar provision exists in the adult entertainment ordinance. See Orange County, Fla., Code § 25-260 (2002). Why applicants for rave club licenses enjoy greater due process than applicants for adult entertainment businesses is puzzling.
[2] My view that an original action in the circuit court is not the form of judicial review contemplated by the Supreme Court in the City of Littleton is buttressed by the definition of "judicial review." Black's Law Dictionary defines "judicial review" as "[a] court's power to review the action of other branches or levels of government" and "[a] court's review of a lower court's or an administrative body's factual or legal findings." Black's Law Dictionary 852 (7th ed. 1999). Similarly, the American Heritage Dictionary defines review in the legal context as "[a]n examination of an action or determination esp. by a higher court, in order to correct possible errors." America's Heritage Dictionary 1058 (2d ed. 1976). The plain meaning of these terms implies, at least to me, an appellate type of review by the courts, not an original proceeding.