793 So.2d 899 (2001)
OCALA BREEDERS' SALES COMPANY, INC., Appellant,
v.
FLORIDA GAMING CENTERS, INC., etc., Appellee.
No. SC95561.
Supreme Court of Florida.
August 16, 2001.
Daniel S. Pearson, William F. Hamilton, and Linda Collins Hertz of Holland & Knight LLP, Miami, FL, for Appellant.
*900 Robert P. Smith, James S. Alves, and Gabriel E. Nieto of Hopping Green Sams & Smith, P.A., Tallahassee, Florida; and William P. Cagney, III, P.A., Delray, FL, for Appellee.
PER CURIAM.
We have on appeal a decision of the First District Court of Appeal declaring invalid section 550.615(9), Florida Statutes (Supp.1996). See Ocala Breeders' Sales Company, Inc. v. Florida Gaming Centers, Inc., 731 So.2d 21 (Fla. 1st DCA 1999). We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the following reasons, we affirm the decision of the First District Court of Appeal.

FACTUAL AND PROCEDURAL BACKGROUND
Ocala Breeders Sales Company, Inc. (Breeders) owns a permanent thoroughbred horse racing and sales facility in Marion County, Florida, and has conducted horse sales there since 1975. In 1990, Breeders applied for and received a license to conduct intertrack wagering pursuant to section 550.61(8), Florida Statutes (Supp. 1990), an earlier version of section 550.615(9),[1] containing the same licensure criteria. Breeders has met each requirement every year since first applying, and has had its license renewed yearly.
In July of 1995, Florida Gaming Centers, Inc., d/b/a Ocala Jai Alai, (Jai Alai) filed a complaint for declaratory judgment against Breeders and the State of Florida Department of Business and Professional Regulation, Division of Pari-Mutuel Wagering (the Division), asking the trial court to declare section 550.615(9) unconstitutional. Jai Alai claimed that in the event that Breeders and another pari-mutuel business applied for a section 550.615 license, Breeders would always prevail because the criteria in that section essentially described Breeders.
After the trial court declared section 550.615(9) unconstitutional as a special law, Breeders and the Division jointly appealed to the First District Court of Appeal. In March of 1999, the First District court issued an opinion affirming the trial court and finding the statute unconstitutional as a special law and violative of equal protection. In a separate order, it denied Breeders' suggestion of mootness[2] and declared this issue one of great public importance. After its motions for rehearing and rehearing en banc were denied, Breeders appealed to this Court.

DISCUSSION
The contested statutory scheme outlines several requirements that applicants must fulfill to qualify for an intertrack wagering license. Section 550.615(9)(a) provides:
Upon application to the division on or before January 31 of each year, any quarter horse permit holder that has conducted at least 15 days of thoroughbred horse sales at a permanent sales facility for at least 3 consecutive years, and conducted at least one day of nonwagering thoroughbred racing, with a purse structure of at least $250,000 per year for 2 consecutive years prior to such application, shall be issued a license to conduct intertrack wagering for thoroughbred racing for up to 21 days in *901 connection with thoroughbred sales, to conduct intertrack wagering at such permanent sales facility between November 1 and May 8 of the following year, to conduct intertrack wagering at such permanent sales facility between May 9 and October 31 at such times and on such days as any jai alai permit holder in the same county is not conducting live performances, and to conduct intertrack wagering under the provisions of this subsection during the weekend of the Kentucky Derby, the Preakness, the Belmont, and a Breeders' Cup Meet that is conducted before November 1 and after May 8, subject to conditions set forth in this subsection, provided that no more than one such license may be issued.
Subsection (b) outlines the procedure to be used by the Division if there is more than one applicant. It states:
If more than one permit holder applies, the division shall determine which permit holder shall be granted the license. In making its determination, the division shall consider the length of time the permit holder has been conducting thoroughbred horse sales in this state, the length of time the applicant has had a permanent location in this state, and the volume of sales of thoroughbred horses in this state, giving the greater weight to the applicant that meets these criteria.
Subsection (e) provides an exception to the quarter horse racing requirement, stating: "For each year such quarter horse permit-holder must obtain the license set forth in paragraph (a), any provisions relating to suspension or revocation of a quarter horse permit for failure to conduct live quarter horse racing do not apply."
The First District found that these statutory provisions in tandem created an impenetrable barrier to all intertrack wagering applicants except Breeders.[3] We agree. As that court found, under section 550.615(9)(b), also known as the "tiebreaker provision," Breeders would always prevail against another applicant because it has the longest history as a quarter horse permit holder, owns a permanent horse sales facility, and has generated a greater volume of horse sales than any other permit holder, and its failure to conduct quarter horse racing is excused by subsection(e). As did the First District, we find this statute unconstitutional as a special law enacted under the guise of a general law in violation of article III, section 10 of the Florida Constitution.[4]
We also hold, consistent with the First District, that this statute violates the right to equal protection of the law. It is well settled under Florida law that all similarly situated persons are equal under the law and must be treated alike. See St. Mary's Hospital, Inc. v. Phillipe, 769 So.2d 961, 971 (Fla.2000); Palm Harbor Special Fire Control Dist. v. Kelly, 516 So.2d 249, 251 (Fla.1987). Moreover, all statutory classifications that treat one person or group differently than others must bear some reasonable relationship to a legitimate state objective and cannot be discriminatory, arbitrary, or oppressive. See St. Mary's Hospital, 769 So.2d at 971; Abdala v. World Omni Leasing, Inc., 583 *902 So.2d 330, 333 (Fla.1991); In re Estate of Greenberg, 390 So.2d 40 (Fla.1980).
The First District found that section 550.615 was enacted to increase revenues at pari-mutuel wagering facilities by providing protection to thoroughbred horse breeders from the state policy against off-track betting, but that no rational relationship existed between this purpose and the detailed licensure criteria in the disputed statute. For instance, prior to the enactment of section 550.615(9), horse breeders had not been involved in pari-mutuel wagering, but that subsection required applicants to have conducted thoroughbred horse sales and racing. Moreover, no reasons are advanced in the statute for narrowing the field of applicants to those who hold quarter horse permits, nor is there a basis for requiring that a prospective licensee conduct "at least one day of nonwagering thoroughbred racing, with a purse structure of at least $250,000 per year for two consecutive years." § 550.615(9)(a). Curiously, Breeders is the only business entity that had ever obtained a nonwagering thoroughbred racing permit. In addition, there appears to be no rational basis for the exemption given to the holder of a quarter horse permit that qualifies for an intertrack wagering license even if the quarter horse permit is otherwise subject to revocation under section 550.615(9)(e).
In West Flagler Kennel Club, Inc. v. Florida State Racing Commission, 153 So.2d 5 (Fla.1963), where petitioners, owners of pari-mutuel establishments, also complained of equal protection violations, we found the subject statute, chapter 61-1940, Laws of Florida, also employed arbitrary criteria. In finding the statute violative of equal protection, we said:
[T]his legislation ... [grants] to certain permit holders, designated in terms not susceptible of generic application now or in the future, the right to conduct harness racing in Broward County upon compliance with its conditions. The act is therefore arbitrary and not uniform or equal in its specification of the thing as well as the county affected.
West Flagler Kennel Club, 153 So.2d at 8. Likewise, no rational basis exists for the criteria used in section 550.615 and it, therefore, violates the equal protection rights of other potential licensees such as Jai Alai.
For these reasons, we affirm the First District's decision finding section 550.615(9) unconstitutional as a special law.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Section 550.615(9) was repealed during the 2000 legislative session. See ch.2000-354, § 44 Laws of Florida.
[2] On February 5, 1999, the Division granted Breeders a new license under section 550.6308, Florida Statutes (Supp.1998), instead of section 550.615, to conduct intertrack wagering for the remainder of fiscal year 1998-1999. Breeders then began to operate under this license.
[3] Breeders acquired the required quarter horse permit in 1985 and built its own permanent facility soon thereafter.
[4] Article III, section 10 states:

No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law. Such notice shall not be necessary when the law, except the provision for referendum, is conditioned to become effective only upon approval by vote of the electors of the area affected.