823 So.2d 732 (2002)
ORANGE COUNTY, Petitioner,
v.
COSTCO WHOLESALE CORPORATION, Respondent.
No. SC01-382.
Supreme Court of Florida.
June 27, 2002.
*733 James F. Page, Jr., and G. Robertson Dilg of Gray, Harris & Robinson, P.A., Orlando, FL, for Petitioner.
Scott A. Glass of Shutts & Bowen, LLP, Orlando, Florida; and Barry Richard of Greenberg, Traurig, P.A., Tallahassee, FL, for Respondent.
Frank A. Shepherd, Miami, FL, for Pacific Legal Foundation, Amicus Curiae.
William H. Adams, III, Jacksonville, FL, Amicus Curiae.
LEWIS, J.
We have for review Costco Wholesale Corp. v. Orange County, 780 So.2d 198 (Fla. 5th DCA 2001), which expressly and directly conflicts with our decision in Glackman v. City of Miami Beach, 51 So.2d 294 (Fla.1951). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

MATERIAL FACTS
In this case, the respondent, Costco Wholesale Corporation ("Costco"), constructed two membership warehouse clubs in unincorporated Orange County, Florida. It then sought to transfer two of its package store liquor licenses to these new locations, both of which are located less than 5000 feet from existing package stores.[1] *734 However, section 38-1414(b) of the Orange County Code,[2] which applies to properties located in unincorporated Orange County, clearly prohibits any new or relocated package liquor sale vendor from opening or starting a package liquor sales business within 5000 feet of an established, licensed package liquor sale vendor's place of business.[3] Indeed, except for a hiatus which occurred sometime between 1964 and 1966, this 5000 foot distance requirement has been in effect in Orange County since 1956. Section 38-1414 was first adopted by the Orange County Board of County Commissioners (the "Board" or the "BCC") in 1956, at which time the Zoning Commission amended its regulations by designating "County Beverage Zones," and prohibiting any new package good vendor from opening a new establishment within such zones. The preamble to the resolution stated its purpose was "to prevent the further scattering of business, trade and industrial uses within the unincorporated portions of the (county) to the detriment of homes and uses of higher character." This continued in effect until sometime after 1964, when the 5000 foot separation distance for package sales vendors was repealed. Subsequently, in 1966, the Board adopted a resolution to once again impose the 5000 foot separation distance on February 14, 1966, which provision was eventually codified as section 38-1414(b). In 1992 and 1993, the BCC amended section 38-1414(b) by adopting Ordinance No. 92-7 and Ordinance No. 93-01, respectively, resulting in section 38-1414(b) of the Orange County Code as it currently exists.
To implement the license transfers despite this restriction, Costco applied for a variance from Orange County, which application was denied.[4] After denial of the *735 variance requests, Costco filed an action seeking declaratory and injunctive relief, asserting that because the distance separation ordinance was arbitrary and capricious, it should be declared unconstitutional. The parties stipulated that the only issue of law to be determined was "whether the County's imposition of a 5,000 foot separation distance between package goods stores is a constitutional exercise of the police powers." 780 So.2d at 201.
At trial, Edward John Williams, who had been the director of the Orange County Planning Department at the time all of the county ordinances had been readopted and consolidated into one code, testified that the purpose of the ordinance was to provide a balance between the desired use and the desirability of protecting residential districts. Williams noted that the 5000-foot distance separation requirement represents approximately a one-mile radius, which is "typically the distance for a primary market for a store or facility of this nature." He observed that this distance provides residents enough opportunity to use such facilities without allowing such businesses to become so dense that they, along with activities they generate, become a problem. He noted that Orange County is far different from other jurisdictions in that it has "more commercial acreage per thousand population than just about any other jurisdiction in the country." At the time the ordinance was reenacted in 1992, the County had over 8000 acres zoned commercial where package liquor stores could be located, with an additional 7000 acres projected by the year 2010. According to Williams, "there were more than enough opportunities to accommodate and provide reasonable use" for package liquor stores. For that reason, in Williams' experience, the ordinance was not overly restrictive.
According to Williams, the purpose of section 38-1414 was not to protect the economic interests of package liquor store owners, but to have a reasonable buffer and distance between their businesses, and to respect both residential and business considerations. He had observed that the problem with aggregating such businesses was not necessarily an evil inherent in the stores themselves, but primarily rested in the secondary effects associated with such business operations. He stated that allowing such stores in close proximity to each other "lowers residential property values and creates an extraordinary amount of traffic in and about those residential areas." He opined that, because there are certain problematic activities (such as drinking in the parking lots, fights, and driving while intoxicated) typically associated with package stores, "[s]preading them out while allowing sufficient opportunity to accommodate the need for them was [the County's] primary objective." The regulatory strategy reflected in the distance restriction "seemed to minimize the adverse impacts associated with such uses, while allowing them to congregate seemed to create an impact greater than the number of uses."
The parties stipulated that there are currently 65 licenses (designated as 3PS) specifically for package liquor stores issued in unincorporated Orange County. There are currently 149 businesses within the unincorporated areas which hold licenses designated as 4COP which permits the sale of package alcoholic beverages. Of these businesses, only about twelve are unable to offer package sales because of the 5000-foot distance separation requirement. Mitch Gordon, Acting Zoning Director of Orange County, testified by affidavit: "At no time have I been told that there is an insufficient supply of package stores in Orange County or that they are *736 located in areas that inconvenienced the shopping public."
The trial court judicially noticed that alcohol is a harmful and heavily regulated product. It reasoned that because Orange County could ban alcoholic sales completely, the county's less restrictive regulation was substantially related to a legitimate government goal. Id. at 202.
On appeal, the Fifth District strongly disagreed with this rationale, stating:
While the County may have the power to ban alcoholic products completely, the ban, or any ban for that manner, must have a reasonable relationship to public health, morals and welfare. When the lesser regulation impacts constitutionally-protected rights, the government still carries the burden of demonstrating the reasonable relationship. In this case, the record below fails to meet that burden.
Id. at 202-03. Although stating that it recognized that a presumption of constitutionality applied in assessing Costco's facial challenge to the ordinance, the district court reasoned that "the constitutional right of property owners to make legitimate use of the property `may not be curtailed by unreasonable restrictions under the guise of police power.' If the regulation `exceeds the bounds of necessity for the public welfare,' it must be `stricken as an unconstitutional invasion of property rights.'" Id. at 201 (quoting Burritt v. Harris, 172 So.2d 820, 823 (Fla.1965)). After applying a "substantial relationship" analysis to the record evidence, the district court concluded: "While we generally agree with established case law that courts should not invade the authority of elected officials absent a paramount constitutional right and duty, we believe this case represents an exception and presents a situation in which there exists both a right and a duty for this court to hold the regulation unconstitutional." Id. at 203. This timely petition for review followed.

ANALYSIS
In State ex rel. Eichenbaum v. Cochran, 114 So.2d 797 (Fla.1959), this Court specifically expressed the correct standard of review applicable in determining the validity of a county ordinance regulating the distance between holders of liquor licenses:
We should also retain in our thinking the proposition that the regulation and control of the alcoholic beverage business is peculiarly a legislative function. In this connection, as in all similar situations, when the legislative branch of the government exercises a legislative power in the form of a duly enacted statute or ordinance it is not the function of a court to explore the wisdom or advisability of the enactment in order to bring its enforceability into question. To this end the limit of the court's authority is to measure the validity of the legislative enactment by the requirements of the controlling law. If those standards are met the legislation should be upheld.
Id. at 800. Applying this appropriate standard of review, we conclude that here, the trial court correctly determined that the subject ordinance was within constitutional parameters, as reflected in its final judgment:
The right of the County to regulate locations that sell alcoholic beverages is grounded in Section 562.45(2), Florida Statutes,[[5]] and is clearly related to the *737 health, safety and welfare of its citizens. Glackman v. City of Miami Beach, 51 So.2d 294 (Fla.1951)....
The Supreme Court of Florida has upheld numerous distance regulations between vendors selling alcoholic beverages. While this 5000-foot restriction in Section 38-1414 is longer than those approved by the Supreme Court of Florida, nothing before this Court has demonstrated that the 5000 foot restriction is arbitrary and capricious or unrelated to the health, safety and welfare of the citizens of Orange County.
Costco Wholesale Corp. v. Orange County, No. C10 00-1136, final judgment at 2 (Fla. 9th Cir. Ct. order filed June. 7, 2000).[6]
Because the challenged ordinance embodies a policy decision of broad application, it reflects a legislative action, rather than conduct that would be classified quasi-judicial. See generally Board of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469, 474 (Fla.1993) ("Generally speaking, legislative action results in the formulation of a general rule of policy, whereas judicial action results in the application of a general rule of policy."). The subject ordinance was, therefore, entitled to a presumption of validity. See Glackman v. City of Miami Beach, 51 So.2d 294, 295-96 (Fla.1951) (observing that an ordinance which prohibited a vendor from selling liquors "in any place of business located within 1000 feet in an air line, measured from main entrance to main entrance, from another [like] place" was presumptively valid). Indeed, here, the district court stated that it started "with the presumption of constitutionality and the general rule that courts should try to uphold the constitutionality of the enactment when lawfully possible to do so." 780 So.2d at 201. Nonetheless, by shifting the burden of proof to the local government to "[establish] that the regulation here imposed bears substantially on the public health, morals, safety or welfare of the community," id. at 202, the district court effectively disregarded that presumption conducting, instead, a "de novo" reweighing of the evidence presented in the trial courtand substituted its judgment regarding the wisdom of such restriction for that of the legislative body.
This Court's precedent makes it clear that the substantial relationship test does have application here. See State ex rel. Dixie Inn v. City of Miami, 156 Fla. *738 784, 24 So.2d 705, 706 (1946) (observing, in considering the validity of an ordinance "intended to regulate or restrict the location within the City of Miami where intoxicating liquors could be sold," that the Court would determine whether the ordinance was "arbitrary and unreasonable and [had] no substantial relation to health, safety, morals or the general welfare"). However, it is the challenger that has the burden to establish, in the first instance, that no such substantial relationship exists.
Further, as this Court observed in Glackman, "the basic purpose for restricting the distances between businesses of this kind seems well founded in the protection of the health and morals of the general public." 51 So.2d at 296. In assessing the validity of such a restriction, unless, based upon the record before it, the challenged ordinance is clearly not reasonable, a reviewing court will not substitute its judgment for that of the local governing body:
To adopt the appellant's view would be to hold that the last amendatory ordinance is unconstitutional simply because it imposes the additional restriction that a removal to a place within two hundred feet of the first location may not be made unless the new location is more than one thousand feet from another like business; that the restriction of two hundred feet is reasonable but the one of one thousand feet is not. We are unable to follow the reasoning which leads to such a conclusion. Both appear to us reasonable. The appellant could remove his business for two hundred feet in any direction which would not bring it within the proscribed area; and the basic purpose for restricting the distances between businesses of this kind seems well founded in the protection of the health and morals of the general public.
Id.; see also City of Jacksonville v. Nichol's Alley of Jacksonville, Inc., 402 So.2d 1319, 1320-21(Fla. 1st DCA 1981) (approving an ordinance requiring that the location of the premises of a liquor license applicant be no closer than 1500 feet from the premises of any other valid existing liquor license holder, church, or school, on the ground that it was "neither arbitrary nor discriminatory," observing: "The courts should not substitute their judgment for that of the legislative body as to the reasonableness of the 1500 feet distance limitation."). In light of this precedent, here, the district court, under the rubric of an "equal protection" analysis, applied the rationale that:
Further, if Orange County were to ban alcohol completely, everyone would be treated the same. However, if Orange County permits some vendors to sell alcoholic beverages, then it must permit all citizens to have an equal right unless there is a reason substantially related to the public health, safety, morals and welfare of the community which justifies unequal treatment under the law. Equal protection of the governed is the bedrock of constitutional government. Without it, government fails.
780 So.2d at 203 (emphasis added). Such logic does not accommodate the fact that this Court, as well as many others, has consistently approved distance limitations between liquor license holders as "well founded in the protection of the health and morals of the general public." Glackman, 51 So.2d at 296; cf. also 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 515, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) ("Entirely apart from the Twenty-first Amendment, the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations."); Dixie Inn, 24 So.2d at 707 (observing that the State, in *739 the exercise of its police power, "has the power to regulate and even to prohibit the sale of intoxicating liquors in designated areas and may confer on municipalities similar power"). Under the challenged ordinance, all authorized vendors do have the same right to sell intoxicating liquors just not within 5000 feet of another such licensee.
Correctly applying the teachings of Glackman, we conclude that, on this record, the challenged ordinance is a valid exercise of police power, bearing a substantial relationship to the health, safety, morals, or general welfare of the community. As reflected in the testimony presented at trial here, Florida's counties are diverse, andabsent clear proof that a challenged enactment in the area of liquor license regulation does not bear such a substantial relationship to the health, safety, morals, or general welfare of the communitythe legitimate exercise of a governing body's authority in addressing the particular needs of each community cannot be judicially constrained by requiring conformity to a single, inflexible rule. Our precedent in this area does not suggest that such a result would be appropriate, nor is it required by concepts of "equal protection." The means and methods chosen here to address the concerns related to alcohol do not exceed the bounds of lawful State or local government police power authority, nor are the limitations imposed so restrictive as to be unconstitutional.[7]
Based on the foregoing analysis, we quash the district court's decision, and remand for further proceedings consistent with our opinion in Glackman.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, and QUINCE, JJ., concur.
NOTES
[1] A "package store" as defined in the ordinance is an establishment which sells beer, wine, and liquor for off-site consumption.
[2] Section 38-1414(c) of the Orange County Code provides:

The purpose of creating the distance requirements mentioned in subsection (b) of this section is to provide and require that no package sale vendor which is located or proposes to locate in the unincorporated portion of the county outside of any municipality shall be permitted to operate at a new location within a distance of five thousand (5,000) feet of the location of any package sale vendor which is both (i) established, existing and licensed at the time of the package sale vendor's application to operate at the new location and (ii) located in any area of the county either unincorporated or within a municipality in the county.
Orange County, Fla., Code of Ordinances § 38-1414(c) (1993).
[3] Of some historical interest, in October 1999, the Orange County Zoning Department proposed to the Planning and Zoning Commission (the "P & Z") that the provision restricting the distance between package stores be repealed, suggesting that it furthered no public health, safety, moral or welfare purpose. In the Zoning Department's presentation to the P & Z, it indicated that the greatest distance separation it had discovered in Florida outside Orange County was in Dade County (where the distance is 1500 feet), noting that the 5000-foot separation requirement is "extreme when compared to other jurisdictions." The Zoning Director was of the opinion that the regulation advanced no particular zoning purpose but only served to keep new package stores from locating within three square miles of long-established stores. The Orange County Sheriff's Office was of the view that no additional problems would be created by repeal of the restriction. While it is interesting, but certainly not determinative, that the P & Z subsequently recommended to the Orange County Board of County Commissioners that the restriction be repealed, the representatives elected by the citizens as members of the Board of County Commissioners did not adopt the recommendation to reduce the distance of the separation requirement.
[4] The district court quoted isolated portions of the variance proceedings which it apparently thought important to the validity of the ordinance which restricted liquor locations, even though the validity of the ordinance was not the subject of the formal hearing.
[5] Section 562.45(2)(a), Florida Statutes (1999), provides:

(2)(a) Nothing contained in the Beverage Law shall be construed to affect or impair the power or right of any county or incorporated municipality of the state to enact ordinances regulating the hours of business and location of place of business, and prescribing sanitary regulations therefor, of any licensee under the Beverage Law within the county or corporate limits of such municipality. However, except for premises licensed on or before July 1, 1999, and except for locations that are licensed as restaurants, which derive at least 51 percent of their gross revenues from the sale of food and nonalcoholic beverages, pursuant to chapter 509, a location for on-premises consumption of alcoholic beverages may not be located within 500 feet of the real property that comprises a public or private elementary school, middle school, or secondary school unless the county or municipality approves the location as promoting the public health, safety, and general welfare of the community under proceedings as provided in s. 125.66(4), for counties, and s. 166.041(3)(c), for municipalities. This restriction shall not, however, be construed to prohibit the issuance of temporary permits to certain nonprofit organizations as provided for in s. 561.422. The division may not issue a change in the series of a license or approve a change of a licensee's location unless the licensee provides documentation of proper zoning from the appropriate county or municipal zoning authorities.
[6] We specifically do not comment or rule upon the various separation distances mentioned by the trial court, because such are not before us today. Our decision is limited exclusively to the Orange County ordinance before us.
[7] Where, in contrast, no such rational basis undergirds the statutory criteria used to distinguish between license holders, challenged legislation has not withstood attack. Thus, we invalidated a statute which "was enacted to increase revenues at pari-mutuel wagering facilities by providing protection to thoroughbred horse breeders from the state policy against off-track betting" where no rational relationship existed between this purpose and the detailed licensure criteria in the challenged statute. Ocala Breeders' Sales Co., Inc. v. Florida Gaming Centers, Inc., 793 So.2d 899, 902 (Fla.2001) (invalidating as a "special law enacted under the guise of a general law in violation of article III, section 10 of the Florida Constitution" a state statutory scheme governing intertrack wagering license applications whose provisions "in tandem created an impenetrable barrier to all intertrack wagering applicants except [the currently licensed wagering facility]"). In Ocala Breeders, prospective licensees were required by statute to conduct "at least one day of nonwagering thoroughbred racing, with a purse structure of at least $250,000 per year for two consecutive years." As this Court observed, "curiously," Ocala Breeders' Sales Company, Inc. was "the only business entity that had ever obtained a nonwagering thoroughbred racing permit." Id.