ROTHENBERG, J.
(dissenting) (revised).
The majority opinion strikes down sections 8-11 and 8-12 of the City of Coral Gables’ (“the City”) zoning code (“Zoning Code”) as applied to personal-use pickup trucks on two grounds: (1) sections 8-11 and 8-12 cannot be rationally related to preserving the residential character of a neighborhood by excluding commercial uses because the ordinances are not limited to commercial vehicles; and (2) the ordinances cannot be supported on aesthetic grounds. I must respectfully dissent because the majority opinion suffers from the following fatal flaws: it completely ignores and fails to apply the required standard of review, and it is in direct conflict with binding precedent of the Florida Supreme Court and this Court, holding that aesthetic considerations are a valid basis for zoning in Florida and a valid exercise of a municipality’s police powers.
The facts are not in dispute. Lowell Joseph Kuvin (“Kuvin”) lived in the City in a rental home that did not have a garage. At the time of his residency in the City, Kuvin owned and drove for personal use a Ford F-150 pickup truck, which he routinely parked on the street in front of his home. After several warnings, Kuvin was issued a citation, alleging a violation of the City’s Zoning Code. After conducting a hearing, the City’s Building and Zoning Board (“Board”) found Kuvin guilty of the violation and fined him $50 plus costs.
Kuvin appealed the Board’s decision by filing a complaint in the circuit court. In his complaint, Kuvin sought a declaration that sections 8-11 and 8-12 of the Zoning Code were unconstitutional. Section 8-11 prohibits the parking of trucks in residential areas of the City unless parked in an enclosed garage. Section 8-12, the zoning ordinance Kuvin was cited for violating, prohibits the parking of trucks, trailers, and commercial and recreational vehicles upon the streets or other public places in the City between the hours of 7:00 p.m. and 7:00 a.m. of the following day.
Kuvin eventually moved for summary judgment asserting that: (1) sections 8-11 and 8-12 of the City’s Zoning Code violated his right of freedom of association; and (2) sections 8-11 and 8-12 of the City’s Zoning Code are unconstitutionally vague, arbitrary, capricious, and selectively enforced as applied to pickup trucks. The City filed a cross-motion for summary *612 judgment. The trial court granted the City’s motion and entered a final declaratory judgment in favor of the City. Kuvin appealed to this Court, and the majority opinion reverses the trial court’s order.
In this dissent, I will address this Court’s standard of review, which was not mentioned nor followed by the majority; Kuviris fundamental rights challenge, which was not addressed by the majority; and decisions by the Florida Supreme Court, this Court, and the Second District that are in conflict with the majority opinion.
STANDARD OF REVIEW
I begin my analysis by addressing this Court’s standard of review. Constitutional challenges to statutes or ordinances involve pure questions of law reviewable on appeal de novo. Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm’n, 838 So.2d 492, 500 (Fla.2003); see also State v. Hanna, 901 So.2d 201, 204 (Fla. 5th DCA 2005) (“The interpretation of a statute or an ordinance is a purely legal matter and is subject to de novo review.”).
Because Kuvin challenges the constitutionality of municipal zoning ordinances, the scope of our review is dependent on the rights that Kuvin alleges are implicated. As Justice Cantero aptly noted in his dissent in State v. J.P., 907 So.2d 1101, 1120 (Fla.2004), “The first issue in every case considering the constitutionality of a statute or ordinance is which standard applies. Not only is the applicable standard the threshold determination in any constitutional analysis; it is often the most crucial. In this case, it has made all the difference.”
Kuvin argues on appeal that sections 8-11 and 8-12 of the City’s Zoning Code infringe on his fundamental First Amendment right of freedom of association. He therefore contends that the trial court erred in failing to apply a strict scrutiny analysis in determining the constitutionality of the ordinances. Although the majority opinion fails to address Kuviris “fundamental right” argument or to specify the applicable standard of review in analyzing Kuviris claims, I can only assume by the majority’s silence that it too finds Kuviris fundamental right argument meritless. I will therefore only address Kuviris First Amendment fundamental right arguments briefly at the end of my dissent, and focus my analysis on what appears to be the majority’s position — that no fundamental constitutional rights are at issue in this case and the ordinances are not rationally related to a legitimate public purpose.
The majority’s failure to identify its standard of review and the lens through which it applies its judicial scrutiny perhaps explains its conclusions. In fact, it appears that the majority opinion ignores the legal principles which must govern its review. The judicial lens through which this Court must examine the City’s exercise of its police power is governed by well-established law, beginning with the premise that rational basis scrutiny “is the most relaxed and tolerant form of judicial scrutiny,” City of Dallas v. Stanglin, 490 U.S. 19, 26, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (emphasis added), and municipal zoning ordinances, which are legislative enactments, are presumed to be valid and constitutional. See Orange County v. Costco Wholesale Corp., 823 So.2d 732, 737 (Fla.2002) (specifying that ordinances reflecting legislative action are entitled to a presumption of validity); State v. Hanna, 901 So.2d 201, 204 (Fla. 5th DCA 2005) (holding that statutes and ordinances are presumed to be constitutional and all reasonable doubts must be resolved in favor of constitutionality).
*613 Statutes and ordinances in Florida not only enjoy a presumption in favor of constitutionality, the Florida Supreme Court and this Court have repeatedly held that zoning restrictions must be upheld unless they bear no substantial relation to legitimate societal policies or it can be clearly shown that the regulation is a mere arbitrary exercise of the municipality’s police power. See Dep’t of Cmty. Affairs v. Moorman, 664 So.2d 930, 983 (Fla.1995) (“[W]e have repeatedly held that zoning restrictions must be upheld unless they bear no substantial relationship to legitimate societal policies.”); Harrell’s Candy Kitchen, Inc. v. Sarasota-Manatee Airport Auth., 111 So.2d 439, 443 (Fla.1959) (holding that zoning regulations are presumptively valid, “and the burden is upon him who attacks such regulation to carry the extraordinary burden of both alleging and proving that it is unreasonable and bears no substantial relation to public health, safety, morals or general welfare”); City of Coral Gables v. Wood, 305 So.2d 261, 263 (Fla. 3d DCA 1974) (“A zoning ordinance will be upheld unless it is clearly shown that it has no foundation in reason and is a mere arbitrary exercise of power without reference to public health, morals, safety or welfare”).
A zoning ordinance also must be upheld if reasonable persons could differ as to its propriety. In other words, “[i]f the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.” Vill. of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 388, 47 S.Ct. 114, 71 L.Ed. 303 (1926); Bd. of County Comm’rs of Brevard County v. Snyder, 627 So.2d 469, 472 (Fla.1993); City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941).
“The fairly debatable rule has its basis in the deference that the judicial power owes the legislative function under the separation of powers doctrine inherent in our form of government and expressly embodied in our state and federal constitutions.” Albright v. Hensley, 492 So.2d 852, 856 (Fla. 5th DCA 1986) (Cowart, J., dissenting). Thus, “[t]he fairly debatable standard of review is a highly deferential standard requiring approval of a planning action if reasonable persons could differ as to its propriety.” Martin County v. Yusem, 690 So.2d 1288, 1295 (Fla.1997).
The majority correctly recognizes that no fundamental constitutional rights are at issue in this case and that rational basis scrutiny is the proper standard of review. It however completely ignores and does not apply the “relaxed and tolerant form of judicial scrutiny” mandated by the United States Supreme Court in Stanglin, 490 U.S. at 26, 109 S.Ct. 1591; does not apply the presumption of constitutionality afforded statutes and ordinances; fails to recognize that the regulations must be upheld unless it clearly can be shown to be an arbitrary exercise of the City’s police powers bearing no relation to any legitimate public purpose; and does not overcome the highly deferential standard requiring that the ordinances be upheld where reasonable persons could differ as to their propriety.
SECTIONS 8-11 AND 8-12 OF THE CITY’S ZONING CODE BEAR A SUBSTANTIAL RELATION TO A LEGITIMATE PURPOSE
The City asserts that the ordinances in question are a valid exercise of the City’s police power because the ordinances seek to preserve the integrity of the residential areas and the unique aesthetic qualities of the City. Kuvin admits that a zoning ordinance may regulate or limit the use of property on behalf of the general welfare of its citizens and he recognizes that unless the City’s exercise of its police powers is *614 clearly shown to be unreasonable, arbitrary, and without a substantial relation to the public health, safety, morals, or general welfare, the ordinance must be upheld. See Fox v. Town of Bay Harbor Islands, 450 So.2d 559, 560 (Fla. 3d DCA 1984) (holding that the burden of overcoming a zoning ordinance’s presumption of validity is satisfied when it is shown that the ordinance does not bear a substantial relation to the public health, safety, morals, or general welfare). Kuvin’s argument is that, while the ordinances’ restrictions regarding trucks used for commercial purposes may pass constitutional scrutiny, these restrictions, when applied against personal-use trucks with no commercial markings, are arbitrary and unreasonable.
The majority agrees with Kuvin but goes substantially further by holding that zoning ordinances cannot be supported on aesthetic grounds. As will be demonstrated herein, the majority’s findings conflict with established Florida law.
The majority opinion recognizes that the City enjoys and seeks to maintain its reputation as “The City Beautiful.” The majority, however, concludes that by enacting the subject ordinances, “the City has unconstitutionally crossed the line into an impermissible interference with the personal rights of its residents.” The majority’s conclusion is based on two findings: (1) because Kuvin’s pickup truck is a personal-use truck not used for commercial purposes, the ordinances do not bear a rational relationship to the City’s desire to preserve the residential character of residential neighborhoods against commercial influences; and (2) “[t]he argument that the ordinances may be supported on aesthetic grounds is just as unacceptable.” The majority contends that the fact that the ordinances do not address “even more aesthetically displeasing cars ... which [are] in obvious disrepair or just plain dirty ... belies the City’s claim that it has enacted the ordinance[s] to protect the aesthetic integrity of the community.” These findings, however, ignore well-established law in this district and state recognizing a local government’s right to enact legislation to protect the appearance of its community as a legitimate exercise of its inherent police power.
ZONING BASED ON AESTHETICS IS A VALID EXERCISE OF THE CITY’S POLICE POWER
This Court and other courts of this state have repeatedly found that measures designed to enhance or maintain the aesthetic appeal of a community are a valid exercise of a local government’s police power and these measures bear a rational relationship to a legitimate purpose. “Florida has long recognized that local governments may legislate to protect the appearance of their communities as a legitimate exercise of their inherent police power.” City of Sunrise v. D.C.A. Homes, 421 So.2d 1084, 1085 (Fla. 4th DCA 1982) (emphasis added); see also City of Lake Wales v. Lamar Adver. Ass’n of Lakeland, Fla., 414 So.2d 1030, 1032 (Fla.1982) (recognizing that “[z]oning solely for aesthetic purposes is an idea whose time has come; it is not outside the scope of the police power”) (quoting Westfield Motor Sales Co. v. Town of Westfield, 129 N.J.Super. 528, 324 A.2d 113, 119 (1974)); Intl Co. v. City of Miami Beach, 90 So.2d 906, 906 (Fla.1956) (finding that zoning regulations based on aesthetics are relevant to maintaining the general welfare and well-being of a community); Metro. Dade County v. Section 11 Prop. Corp., 719 So.2d 1204 (Fla. 3d DCA 1998) (reinstating administrative agency’s denial of a special exception to develop land with an industrial-looking mini self-storage facility, finding that aesthetics may be properly considered by *615 the agency); Campbell v. Monroe County, 426 So.2d 1158, 1160 (Fla. 3d DCA 1988) (“We agree that a Florida county may enforce zoning requirements which primarily regulate aesthetic appearances.”) (emphasis added); Lamar-Orlando Outdoor Adver. v. City of Ormond Beach, 415 So.2d 1312, 1316 (Fla. 5th DCA 1982) (upholding an ordinance banning billboards and off-site advertising in Ormond Beach, a primarily residential community, as a valid exercise of the police power); Moviematic Indus. Corp. v. Bd. of County Commrs of Metro. Dade County, 349 So.2d 667, 669 (Fla. 3d DCA 1977) (holding that zoning regulations which tend to preserve the residential or historical character of a neighborhood and/to enhance the aesthetic appeal of a community are considered valid exercises of the public power as relating to the general welfare of the community); Wood, 305 So.2d at 263 (recognizing that [a]esthetic considerations have been held to be a valid basis for zoning in Florida; finding that an ordinance prohibiting campers or other vehicles designed or adaptable for human habitation from being kept or parked upon public or private property within the City of Coral Gables, unless confined in a garage, was reasonable and constitutional); see also Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla.1960), receded from on other grounds by City of Lake Wales, 414 So.2d at 1032; Rotenberg v. City of Fort Pierce, 202 So.2d 782 (Fla. 4th DCA 1967); State ex rel. Boozer v. City of Miami, 193 So.2d 449 (Fla. 3d DCA 1967).
These cases establish clear and binding precedent of the Florida Supreme Court and this Court upholding zoning regulations that tend to preserve the residential character of a neighborhood and/or to enhance the aesthetic appeal of a community. The majority ignores this binding precedent and concludes that the City’s zoning ordinances cannot be rationally related to a legitimate purpose because ugly or rusted private passenger vehicles, which the majority concludes are more offensive vehicles, are not regulated by the subject ordinances, and [o]ur nation and way of life are based on a treasured diversity.
With all due respect to the majority, what it finds is more aesthetically displeasing is irrelevant, and the ordinances in question do not legislate against diversity. What the City seeks to preserve is the residential character of the City. One may own and park any private passenger car regardless of its make, model, color, year, or condition anywhere in the City day or night. One may also own and drive a truck, recreational vehicle, or camper, but these vehicles must be parked in an enclosed garage at night. The ordinances do not restrict diversity because they do not restrict ownership or use. The ordinances only restrict where these commercial-looking vehicles are parked at night.
The majority’s findings also ignore our standard of review, requiring that we must begin with the presumption that the ordinances are constitutional, resolve all reasonable doubts in favor of upholding their constitutionality, uphold the regulations if reasonable persons could differ as to their propriety, uphold the ordinances if their validity is fairly debatable, recognize that the fairly debatable standard of review is highly deferential, and uphold the ordinances unless they are clearly shown to be an arbitrary exercise of the City’s police power, bearing no relation to a legitimate public purpose.
OPEN-BED PICKUP TRUCKS PARKED IN RESIDENTIAL NEIGHBORHOODS AT NIGHT DETRACT FROM THEIR RESIDENTIAL CHARACTER
The majority concludes that the subject zoning ordinances are unconstitutional as *616 applied to Kuvin’s open-bed pickup truck because it is not a recreational vehicle nor a vehicle used for commercial purposes. In other words, if Kuvin was a handyman or construction worker by trade and used his open-bed pickup truck for commercial purposes, the majority would have no problem with an ordinance that restricts his ability to park his truck in front of his house in the City at night, even if he left all of his supplies and equipment at the business. On the other hand, if Kuvin only used his pickup truck for personal use, the majority would find it unconstitutional to restrict his ability to park his truck in front of his house at night with a surfboard, smelly fishing nets, or a number of other items in the open bed of his truck. To base the constitutionality of the ordinances solely on whether a person uses his truck for personal or commercial purposes obviously makes no sense and would lead to absurd results. That is why the ordinances restrict the parking of all trailers, recreational vehicles, and trucks in residential neighborhoods at night unless enclosed in a garage. The Coral Gables Zoning Code defines truck as:
Any motor vehicle designed, used or maintained for transporting or delivering property or material used in trade or commerce in general. Trucks shall include any motor vehicle having space designed for and capable of carrying property, cargo, or bulk material and which space is not occupied by passenger seating.
Coral Gables, Fla., Zoning Code 2-128 (emphasis added).
These ordinances make perfect sense and are rationally related to maintaining and enhancing the residential character of the City’s neighborhoods and the aesthetics of the City because any vehicle that was designed for commercial use, regardless of whether it is used for commercial purposes, looks the same and is likely to be used to store and carry bulk material exposed to public view. The restriction, therefore, is rationally related to the health and welfare of the residents in the City.
Maintaining the aesthetics of the City is rationally related to the welfare of the City. The courts in this state and others have recognized that aesthetics can be an important factor in ensuring the economic vitality of an area and that the separation of the commercial from residential not only affects the health and hazards of the community, it impacts the welfare of the community and the value of property within its borders. The attractiveness of a community ... [is] of prime concern to the whole people and therefore affect[s] the welfare of all. Merritt v. Peters, 65 So.2d 861, 862 (Fla.1953); see also United Adver. Corp. v. Borough of Metuchen, 42 N.J. 1, 198 A.2d 447, 449 (1964) (There are areas in which aesthetics and economics coalesce, areas in which a discordant sight is as hard an economic fact as an annoying odor or sound.).
Ordinances prohibiting trucks, house trailers, and campers from being parked in residential neighborhoods have withstood constitutional challenges and have been upheld by various Florida courts. The common thread appears to be the intent to preserve the residential feel and look of the residential areas of the communities that have enacted these ordinances, which Florida’s courts have determined is a legitimate governmental interest.
We begin with this Courts ruling in Wood, which involved an ordinance similar to section 8-11 of the City’s Zoning Code. The ordinance this Court reviewed in Wood prohibited campers, house trailers, and any other vehicle or part of a vehicle designed or adaptable for human habitation, from being parked or kept on pub- *617 lie or private property in Coral Gables unless enclosed in a garage. In upholding the ordinance, this Court held that a neighborhoods aesthetics is integrally bound to its property values and is a relevant zoning consideration, and that because Wood was not being deprived of his right to own a camper or recreational vehicle or to store it on his property, but was only being required to store it in a garage or similar structure, the ordinance was not unreasonable. 305 So.2d at 268-64. Thus, this Court found that the City’s ordinance was a valid exercise of the City’s police power on its face and as applied to Wood. This Court, therefore, has already spoken loudly and clearly on the constitutionality of ordinances enacted for aesthetic reasons, and has found that, where the ordinance does not restrict ownership or use of the vehicle, it is not unreasonable. Likewise, the ordinances in the instant case were enacted for aesthetic reasons, prohibiting vehicles designed for commercial use from being parked in residential neighborhoods at night, but not restricting ownership or use, and providing a garage exception. Therefore, based upon Wood, the ordinances in question are constitutional, and the majority opinion is in conflict with this Courts opinion in Wood.
The majority attempts to distinguish Wood on the basis that there is a difference between aesthetic regulations directed to commercial and/or recreational vehicles and those directed to vehicles that, while designed for commercial use, are being used for personal use. The majority, however, misses the point — that local governments may constitutionally legislate to protect the appearance of their communities as a legitimate exercise of their inherent police power, and that zoning solely for aesthetic purposes is a valid exercise of the City’s police power, as long as it has not clearly been shown that the ordinance has no foundation in reason or is an arbitrary exercise of the City’s police power. Wood, 305 So.2d at 263. Kuvin has not made the required showing. Thus, based on Wood, we must affirm.
Kuvin has not clearly shown that the City’s ordinances have no foundation in reason and are merely arbitrary. Kuvin’s pickup truck has a large open bed, an open space clearly designed for transporting material used in trade or commerce, property, cargo, or bulk material. Whether Kuvin actually uses his truck to transport material used in trade or commerce, the look is still the same. If the City may regulate the parking of trucks with open spaces designed for and used for commercial purposes in residential neighborhoods, it is illogical to conclude that the very same trucks may not be regulated if their owners do not use them for their designed purpose. Either way, the vehicle is the same vehicle and the effect upon the residential character of the City is the same because the open space of the vehicle is not designed for passenger travel. The City’s ordinances also do not regulate ownership or use. They only regulate where such vehicles are parked at night. Thus, the ordinances, as applied to Kuvin’s open-bed pickup truck, are reasonable and not a mere arbitrary exercise of the City’s police power.
The majority’s opinion is also in direct conflict with Henley v. City of Cape Coral, 292 So.2d 410 (Fla. 2d DCA 1974). In Henley, the Second District upheld an ordinance prohibiting trucks and house trailers of any kind from being parked in the subdivision for more than four hours, and trucks from being parked overnight in all areas zoned residential. Id. at 411. The ordinance provided that no truck, whether being used for commercial or personal purposes, could be parked overnight in residential areas. The court, in upholding the constitutionality of the- ordi *618 nance, held that the ordinance, which was intended to protect [the city’s] residential neighborhoods against the lingering presence of commercial vehicles, was rationally related to a legitimate governmental interest and was not unreasonable nor over-broad as the ordinance did not result in a total ban since it provided for a garage exception. Id. Henley is indistinguishable from this case, and therefore, requires a finding that the instant ordinances are constitutional.
Henley cannot be distinguished from the instant case as the ordinance in Henley, just like the ordinances in the instant case, was not restricted to recreational and commercial vehicles. It prohibited all trucks, including personal-use trucks, from being parked for greater than four hours or overnight in residential areas unless enclosed in a garage or a similar structure.
The Second District made no distinction in Henley between large trucks and small trucks, or whether they are being used for commercial purposes or solely for personal use, as long as they were designed for commercial use. The ordinances in the instant case also make no distinction between large trucks and small trucks, or whether they are being used for commercial purposes or for personal use as long as they were designed for commercial use. They regulate the parking of trucks, trailers, commercial vehicles, and recreational vehicles within the City regardless of their use. The City defines a truck as [a]ny motor vehicle designed, used or maintained for transporting or delivering property or material used in trade or commerce in general ... including] any motor vehicle having space designed for and capable of carrying property, cargo, or bulk material and which space is not occupied by passenger seating. Coral Gables, Fla., Zoning Code 2-128.
THE ORDINANCES ARE NOT UNCONSTITUTIONAL AS APPLIED TO KUVIN’S MODEL OF TRUCK
The majority and concurring opinions ignore that the focus in Wood and Henley was on the design of the vehicle, not its use, and concludes that because Kuvin uses his open-bed pickup truck for personal use, the ordinances are unconstitutional as applied to him. No Florida court has made such a distinction, nor should it. Because the open bed of Kuvin’s pickup truck was designed to carry and store materials it is indistinguishable from other pickup trucks in general, which are used for commercial purposes. Because Ku-vin’s truck was designed for commercial purposes, it matters not whether he uses it for its intended purpose. Either way, it projects the same image.
The rulings by the Fourth District Court of Appeal in Proctor v. City of Coral Springs, 896 So.2d 771 (Fla. 4th DCA 1981), and an appellate court in Oklahoma in City of Nichols Hills v. Richardson, 939 P.2d 17 (Okla.Crim.App.1997), do not require that we reach a contrary conclusion.
In Proctor, the Fourth District Court addressed the City of Coral Springs’ ordinance prohibiting the parking of commercial vehicles on a public right-of-way adjacent to or on private property during certain times unless in a garage or carport. The Fourth District concluded that the ordinance, as applied to Proctor’s truck, which had no commercial markings and was not used for commercial purposes, was unconstitutional. The issue in Proctor, however, was not whether a municipality could constitutionally restrict where trucks, trailers or campers are parked, but rather whether the classification of Proctor’s personal-use pickup truck as a commercial vehicle was reasonable. The analysis dealt with the reasonableness of the City of Coral Springs’ *619 inclusion of personal use trucks in its definition of a “commercial vehicle,” because only commercial vehicles were being restricted. In contrast, the ordinances in the instant appeal do not restrict commercial vehicles. They restrict trailers, campers, recreational vehicles, and trucks. Thus, the reasonableness of the application of the ordinances as applied to Kuvin’s open-bed pickup truck is beyond question. Interestingly, the Proctor court specifically recognized that an ordinance should be upheld “unless it is clearly shown that it has no foundation in reason and is a mere arbitrary exercise of power without reference to public health, morals, safety or welfare,” and that “[z]oning measures designed to enhance the aesthetic appeal of a community have been recognized as a valid exercise of the police power.” 396 So.2d at 771-72 (citing Wood, 305 So.2d at 263). In fact, the Proctor court noted that the ordinance in Wood was not arbitrary or unreasonable because its aim was to prevent “the unsightly appearances and diminution of property values that occurred when camper-type vehicles were parked or stored out of doors in residential areas of a community.” Proctor, 396 So.2d at 772. Likewise, sections 8-11 and 8-12 of the City’s Zoning Code are not arbitrary or unreasonable because the ordinances seek to preserve the residential character and the overall aesthetics of the City by regulating where vehicles designed for transporting things are parked.
The Nichols Hills case was premised on an ordinance making it unlawful to park commercial or recreational vehicles, trailers, taxi-cabs, or mobile homes within certain zoned districts in Nichols Hills, Oklahoma, during certain times, unless the vehicle was screened from view. While the Nichols Hills court found that “[a]esthetic zoning measures aimed at maintaining property values, thereby promoting the general welfare, can be a valid and permissible exercise of the police power[,]” Nichols Hills, 939 P.2d at 19, the court concluded that the ordinance in question was “unreasonable and over-broad” and struck it down. Id. at 20. The court concluded that a blanket prohibition of all pickup trucks regardless of weight, width, or other factors, including its age or condition, was overbroad as applied to all pickup trucks and as applied to the pickup truck in question. I am unpersuaded by this finding. Additionally, because Nichols Hills is an Oklahoma case, and because no Florida court has concluded, as the Oklahoma court in Nichols Hills concluded, we are not required to follow it, and therefore, unlike Wood and Henley, failure to apply its holding in our case presents no conflict.
To require a weight, width, age, or condition factor to uphold the ordinances, as the Nichols Hills court found, ignores our standard of review. A rational basis analysis is the most relaxed and tolerant form of judicial scrutiny, Stanglin, 490 U.S. at 26, 109 S.Ct. 1591, and a zoning ordinance must be upheld unless it is clearly shown that it possesses no foundation in reason. Wood, 305 So.2d at 263. The ordinances in question seek to preserve the residential character of residential neighborhoods within the City and to preserve the aesthetics of the City. Kuvin’s pickup truck contains a large open bed on the outside of his truck which is designed to carry bulk material, and to store and transport cargo and other items in plain view. Whether Kuvin uses his truck for commercial purposes or simply stores and/or carts his personal property around in the open bed of his truck for all to see matters little. The effect upon the viewer is the same. Thus, the ordinances in question are rationally related to the City’s legitimate in *620 terest and are constitutional as applied to Kuvin’s truck.
The concurring opinion takes the position that, because Kuvin’s pickup truck is a “mainstream vehicle, namely a light truck,” it deserves some special treatment and exclusion in the City’s zoning regulations. I must respectfully disagree. It is unclear where the label “mainstream vehicle” originates. There is no cited authority for this “mainstream” classification, nor for the classification of Kuvin’s pickup truck as a “light truck.” The record does contain a document submitted by Kuvin, who failed to disclose the source of the document, which states that all pickup trucks are “light vehicles.” Such a conclusion is incomprehensible as many pickup trucks are quite large and heavy. The dimensions of Ford F-150 trucks provided in footnote two of the concurring opinion are also unavailing as the footnote makes no reference as to where these measurements come from and whether they relate to Kuvin’s 1993 F-150 pickup truck, which appears in the photos contained in the record to be larger than later models and substantially larger than the cars the concurring opinion compares to Kuvin’s truck. I, therefore, prefer to call Kuvin’s truck what it is: a 1993 Ford F-150 open-bed pickup truck.
An ordinance which prohibits overnight parking of open-bed pickup trucks, designed to store and transport property, cargo, or bulk material, rather than to transport people, regardless of size and weight, in residential neighborhoods at night, unless enclosed in a garage, is reasonable and rationally related to the City’s intent to preserve the aesthetic appeal of the City and the property values of its residents. Kuvin’s “light truck” is still a vehicle designed for commercial purposes. Its large open bed is designed to store and transport items, not people. The size and weight of these trucks vary, depending on whether the truck is designed for two passengers or more and the size of the open bed. An argument could be made that Kuvin’s smaller truck is more “commercial looking” because it has very limited space for passenger use and a large open cargo area. Thus, calling Kuviris vehicle a “light truck” adds nothing to the analysis and appears to be nothing more than a term used to deflect attention from the fact that Kuvin’s truck is an open-bed pickup truck.
Because sections 8-11 and 8-12 of the City’s Zoning Code: are constitutional on their face; are constitutional as applied to personal-use pickup trucks designed for commercial purposes; are rationally related to a legitimate governmental interest; and provide a “garage exception,” they are constitutional as applied to Kuvin’s 1993 Ford F-150 open-bed pickup truck. The fact that the particular house Kuvin chose to rent in the City does not presently have a garage or an enclosed place where Kuvin could park his vehicle at night does not alter this conclusion. Kuvin was on notice regarding the City’s regulations when he chose to rent at a location that did not have a garage.
THE ORDINANCES ARE NOT UNCONSTITUTIONALLY VAGUE
Kuvin also asserts that the ordinances are void for vagueness as they do not give him or persons of ordinary intelligence fair notice of what constitutes the forbidden conduct. Kuvin claims that the vagueness of the ordinances invites arbitrary and selective enforcement against pickup trucks, as the ordinances are not enforced against sport utility vehicles, which technically meet the definition of “truck” under the City’s ordinances. On this point, the majority and I agree, the argument is without merit.
*621 The standard for testing vagueness is whether a statute or ordinance “gives a person of ordinary intelligence fair notice of what constitutes forbidden conduct.” Jones v. Williams Pawn & Gun, Inc., 800 So.2d 267, 270 (Fla. 4th DCA 2001) (citing Sieniarecki v. State, 756 So.2d 68, 74 (Fla. 2000)). “The language of the statute [or ordinance] must provide a definite warning of what conduct is required or prohibited, measured by common understanding and practice.” Jones, 800 So.2d at 270.
Sections 8-11 and 8-12 of the Zoning Code prohibit, in pertinent part, the overnight parking of “trucks” except in an enclosed space or garage. The Zoning Code defines a “truck” as “[a]ny motor vehicle designed, used or maintained for transporting or delivering property or material used in trade or commerce in general.” Coral Gables, Fla., Zoning Code § 2-128. The Zoning Code further specifies that “[t]rucks shall include any motor vehicle having space designed for and capable of carrying property, cargo, or bulk material and which space is not occupied by passenger seating.” Id. In this instance, there is no doubt that Kuvin’s Ford F-150 pickup truck, as defined by the Code, is a “truck.” Kuvin admits that his pickup truck is a “truck.” Consequently, as sections 8-11 and 8-12 of the Code forbid the overnight parking of “trucks” and Kuvin’s pickup truck clearly falls within the Zoning Code’s definition of “truck,” Kuvin had fair notice of the prohibited conduct. We additionally note that, prior to being cited by the City, Kuvin received a written warning notifying him that his conduct was prohibited. We, therefore, conclude that sections 8-11 and 8-12 of the Zoning Code, as applied to Kuvin, are not void for vagueness.
Additionally, Kuvin lacks standing to challenge sections 8-11 or 8-12 of the Zoning Code on the premise that the ordinances may conceivably be applied unconstitutionally to others. We, therefore, need not address his arguments on this ground. Jones, 800 So.2d at 270 (specifying that if the record demonstrates that a person “engaged in some conduct clearly proscribed by the plain and ordinary meaning of the statute [or ordinance], then [that person] cannot successfully challenge it for vagueness nor complain of its vagueness as applied to the hypothetical conduct of others”) (quoting Sieniarecki, 756 So.2d at 74-75).
THE ORDINANCES DO NOT INFRINGE UPON A FUNDAMENTAL RIGHT
Although the majority did not address this argument and thus, by inference has rejected it, because Kuvin’s primary argument on appeal is that the ordinances in question infringe on his First Amendment fundamental right of freedom of association, I will briefly address it. It is well-settled law that if a fundamental right or suspect class is involved, the ordinances in question are subject to strict scrutiny and may only be upheld if they are narrowly tailored to serve a compelling state interest. See J.P., 907 So.2d at 1110 (“To withstand strict scrutiny, a law must be necessary to promote a compelling governmental interest and must be narrowly tailored to advance that interest.”). Kuvin does not assert, nor would I find, that he is a member of a suspect class. Rather, he asserts that he is an owner of a personal-use pickup truck and that the ordinances impinge on his fundamental right of freedom of association. He, therefore, claims that because the ordinances infringe upon a fundamental right, the trial court erred in failing to perform a strict scrutiny analysis in determining its constitutionality. This argument is without merit.
*622 Although the Constitution does not explicitly use the term “association,” the right of association is derived by implication from the First Amendment’s guarantees of speech, press, petition, and assembly. Proctor, 396 So.2d at 772. (Hurley, J., concurring). The two types of freedoms of association recognized by the United States Supreme Court as protected by the Constitution are: (1) the right of association to enter into and to maintain certain intimate human relationships; and (2) the right to associate for the purpose of engaging in those expressive activities protected by the First Amendment. Stanglin, 490 U.S. at 24, 109 S.Ct. 1591; Roberts v. United States Jaycees, 468 U.S. 609, 617, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Because each is different, they will be addressed separately.
A. Intimate Relationships
The Supreme Court has not marked the precise boundaries necessary to meet the “intimate relationship” protection. Courts, however, have accorded constitutional protection to marriage, the begetting and bearing of children, child rearing and education, and cohabitation with relatives. Bd. of Dirs. of Rotary Int’l v. Rotary Club of Duarte, 481 U.S. 537, 546, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1051 (5th Cir.1996). Although the Supreme Court has not held that “constitutional protection is restricted to relationships among family members,” it has “emphasized that the First Amendment protects those relationships ... that presuppose ‘deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one’s life.’ ” Duarte, 481 U.S. at 545, 107 S.Ct. 1940 (quoting Roberts, 468 U.S. at 619-20, 104 S.Ct. 3244).
Kuvin received a citation for parking his open-bed pickup truck in front of his residence at night. Kuvin does not allege, nor does the record demonstrate, that the City’s ordinances restricting the overnight parking of trucks, except in enclosed garages, interferes with any of his intimate relationships. Kuvin was cited for parking his truck in front of the house he was renting during the prohibited time, not for visiting a close friend or relative in the City. Kuvin does not claim that any of his friends or family members were prevented from visiting him when he lived in the City. He does, however, claim that he is prevented from visiting his friends who live in the City after 7:00 p.m. in his truck. While Kuvin does not substantiate this claim and has never been ticketed for visiting a friend in the City, the types of “intimate associations” that have found protection in the First Amendment have been more intimate than Kuvin occasionally visiting friends who currently reside in the City. See Wallace, 80 F.3d at 1051 (“The specific types of intimate associations which have found protection in the First Amendment have been more intimate than our image of typical coach-player relationships.”). Even assuming Kuvin maintained or maintains a close friendship with individuals living in the City, I am unaware of, and Kuvin has failed to direct us to, “any authority which has recognized a close friendship, without more, as the highly personal or intimate human relationship that is protected by the United States Constitution.” Henrise v. Horvath, 174 F.Supp.2d 493, 500 (N.D.Tex.2001) (footnote omitted).
B. Expressive Association
The second protected right of association is the right of “expressive association.” The First Amendment protects “a corresponding right to associate with oth *623 ers in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.” Roberts, 468 U.S. at 622, 104 S.Ct. 8244. “According [constitutional] protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority.” Id.
Although “[t]he First Amendment’s protection of expressive association is not reserved for advocacy groups,” in order “to come within its ambit, a group must engage in some form of expression, whether it be public or private.” Boy Scouts of Am. v. Dale, 580 U.S. 640, 648, 120 S.Ct. 2446,147 L.Ed.2d 554 (2000). If the group engages in “expressive association,” constitutional protections are only implicated if the government action “would significantly affect the [group’s] ability to advocate public or private viewpoints.” Dale, 530 U.S. at 650, 120 S.Ct. 2446. The Supreme Court cautioned in Stanglin that: “It is possible to find some kernel of expression in almost every activity a person undertakes — for example, walking down the street or meeting one’s friends at a shopping mall — but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.” Stanglin, 490 U.S. at 25, 109 S.Ct. 1591. To be classified as an expressive association, there is no requirement that the involved group be devoted to advocacy. Dale, 530 U.S. at 648, 120 S.Ct. 2446. Nor must the group take a public stance. Duarte, 481 U.S. at 548, 107 S.Ct. 1940. Similarly, “[t]he fact that the organization does not trumpet its views from the housetops ... does not mean that its views receive no First Amendment protection.” Dale, 530 U.S. at 656, 120 S.Ct. 2446. Instead, “[a]n association must merely engage in expressive activity that could be impaired in order to be entitled to protection.” Id. at 655, 120 S.Ct. 2446. Such worthy endeavors might include service activities, Duarte, 481 U.S. at 548, 107 S.Ct. 1940, transmitting values like the Boy Scouts of America in Dale, 530 U.S. at 650, 120 S.Ct. 2446, and “civic, charitable, lobbying, fundraising, and other activities.” Roberts, 468 U.S. at 627, 104 S.Ct. 3244.
The “expressive associations” that Kuvin asserts are constitutionally protected are: (1) his occasional visits to the homes of his friends who reside in the City between the hours of 7:00 p.m. and 7:00 a.m. or on the weekends in his open-bed pickup truck; and (2) the occasional visits by a friend who also drives a pickup truck. Kuvin asserts that when his friend came to Ku-vin’s home to “talk, share ideas about work, or ideas about anything, [his friend] had to violate the City’s ordinances and risk being cited for violating its ordinances.”
Kuvin, however, fails to allege that the ordinances restrict the types of “expressive associations” that are protected under the First Amendment, and certainly, he lacks standing to raise any concerns a friend may have had, especially because Kuvin does not assert that the ordinances in question hampered visitation by his friend. Additionally, the types of expressive associations protected by the Constitution are clearly more “expressive” than Kuvin’s occasional visits with his friends residing in the City after 7:00 p.m. or friends with trucks visiting him after 7:00 p.m. for the purpose of sharing time with each other and discussing issues and ideas. Kuvin, therefore, has failed to establish that his “associations” have a clearly articulated expressive identity worthy of constitutional protection under the First Amendment.
More importantly, Kuvin’s associations are not being restricted. Rather, the restrictions provided in the ordinances apply *624 solely to his vehicle and the ordinances do not prohibit his ownership of a truck. The ordinances permit Kuvin to own and drive his pickup truck in the City. He simply must garage the vehicle at night. As the prohibited activity does not infringe on a fundamental right, the trial court did not err in failing to apply strict scrutiny in its constitutional analysis.
CONCLUSION
Municipal zoning ordinances, which are legislative enactments, are presumed to be valid and constitutional. Because the ordinances do not impinge on a fundamental right, the trial court correctly applied rational basis scrutiny in evaluating the ordinances and recognized that the ordinances in question must be upheld as constitutional unless they are not rationally related to a legitimate purpose. The City may constitutionally pass ordinances to enhance or maintain the aesthetic appeal of the community and to protect the City’s residential neighborhoods against the lingering presence of commercial-looking vehicles. Sections 8-11 and 8-12 of the City’s Zoning Code, which restrict where recreational vehicles, campers, and trucks are parked within the City, are rationally related to a legitimate purpose. Kuvin’s truck has a large open bed, a space designed for the storage and transporting of cargo in plain view, thus the ordinances prohibiting trucks and other vehicles containing space for transporting or delivering property, rather than for passenger travel, are constitutional as applied to Kuvin. I, therefore, would affirm the trial court’s order upholding the ordinances.